352 F.2d 119
 David ERLICH, Appellant,
v.
Juda GLASNER, Chaim I. Etner, Bezlial Orlanski, Neptali
Friedman, OsherZilberstein; Juda Glasner, Osher Zilberstein
and Chaim I. Etner, doing businessas the United Orthodox
Rabbinate of Greater Los Angeles, United OrthodoxRabbinate
of GreaterLos Angeles, A. M. Bauman and Jacob Adler, Appellees.
 No. 19872.
 United States Court of Appeals Ninth Circuit.
 Oct. 26, 1965, Rehearing Denied Nov. 26, 1965.
 
 Joseph W. Fairfield, Ethelyn F. Black, Max H. Gewirtz, Beverly Hills, Cal., for appellant.
 Wayne Veatch, Veatch, Thomas, Carlson & Dorsey, Los Angeles, Cal., Thomas C. Lynch, Atty. Gen. of Cal., Herschel T. Elkins, and A. Wallace Tashima, Deputy Attys. Gen., Henry F. Walker, Los Angeles, Cal., for appellee Juda Glasner.
 Richard A. Perkins, Beverly Hills, Cal., for appellee Chaim I. Etner.
 Phill Silver, Hollywood, Cal., for appellees Bezliah Orlanski, and others.
 Before JERTBERG and BROWNING, Circuit Judges, and MUECKE, District judge.
 JERTBERG, Circuit Judge.
 
 
 1
 Appellant, plaintiff below, appeals from a judgment of the District Court dismissing his action as to all of the defendants. It is alleged that the action arises under the Civil Rights Act, 42 U.S.C. 1983 et seq.[1] Jurisdiction of the District Court is predicated on 28 U.S.C. 1343.[2]
 
 
 2
 The allegations of the complaint may be summarized as follows:
 
 
 3
 That plaintiff is the president and general-manager of the West Coast Poultry Company, a corporation; that he and his wife own all of the outstanding shares of the corporation; the corporation was incorporated in August, 1964 and is engaged in the process of slaughtering, processing and distributing kosher poultry, wholesale and retail, to the Jewish population in Los Angeles and nearby counties; that for thirteen years prior to incorporation, the plaintiff operated the same business as an individual under the fictitious name of West Coast Poultry Company.
 
 
 4
 That the defendant, Juda Glasner, is employed by the Department of Health of the State of California as the Kosher Food Law Representative charged with the enforcement of California Penal Code, 383b.[3] This code section was held to be constitutional by the Supreme Court of the State of California in Erlich v. Municipal Court, 55 Cal.2d 553, 11 Cal.Rptr. 758, 360 P.2d 334 (1961).
 
 
 5
 That the defendants Juda Glasner, Chaim I. Etner, and Osher Zilberstein are doing business under the fictitious name of United Orthodox Rabbinate of Greater Los Angeles.
 
 
 6
 That such defendants contend that they are Orthodox Rabbis and that 'they and only they should have full and complete control to dictate what is and what is not kosher'; and that the purposes of such defendants is to prevent plaintiff and other kosher poultry dealers from using the services of any other rabbi except themselves and to compel the plaintiff and other kosher poultry dealers to retain only the services of such defendants for a monetary consideration.
 
 
 7
 That in order to compel kosher poultry dealers of the County of Los Angeles to retain the rabbinical services of such defendants, the defendant Glasner, as Kosher Food Law Representative of the State of California, has caused to issue criminal complaints charging violations of Section 383b of the Penal Code of the State of California to those poultry dealers who did not use the rabbinical services of such defendants.
 
 
 8
 That on or about the 1st day of April, 1964, defendant Glasner 'while acting in his official capacity as kosher food law representative of the State of California and all of the defendants while acting under color of law entered into an unlawful combination and conspiracy for the purpose of depriving the plaintiff of his privileges and immunities guaranteed to every citizen of the United States, including the plaintiff, by Section 1 of the Fourteenth Amendment to the Constitution of the United States and in pursuance to said unlawful combination and conspiracy, have committed the following overt acts:'
 
 
 9
 The overt acts set forth in the complaint may be briefly summarized as follows:
 
 
 10
 (1) Through the efforts of Glasner, the kosher food law representative of the Public Health Department of the State of California, two criminal complaints were filed against the plaintiff falsely accusing him of violating California Penal Code, 383b; (2) numerous criminal complaints were filed against employees of the plaintiff to coerce them to leave his employment and two employees did leave; (3) two other employees against whom criminal complaints were filed were offered a dismissal of the complaints if they would cooperate with the defendants against plaintiff; (4) two other employees were offered payment of money if they would falsely testify against plaintiff in one of the criminal charges made against him; (5) a champertous agreement was entered into by the other defendants with the defendants, Bauman and Adler, competitors of plaintiff, to induce them to commence an action in the Superior Court of Los Angeles County to enjoin the plaintiff from selling Kosher poultry unless the rabbinical services of the defendants were retained by plaintiff; (6) defendants communicated with the customers of plaintiff and the West Coast Poultry Company threatening that if they purchased products from plaintiff citations would be issued against them for the violation of California Penal Code 383b; and (7) defendants circulated advertisements in newspapers advising the public not to purchase plaintiff's kosher products.
 
 
 11
 The complaint concludes with the allegations that: 'the interference by these defendants with the business of the West Coast Poultry Company is a direct interference with the right of the plaintiff to peacefully operate his business and earn a livelihood for himself and his family. That the acts of the defendants under color of law as hereinabove set out deprived the plaintiff of his privileges and immunities, guaranteed to him as a citizen of the United States by Section 1 of Amendment 14 of the Constitution of the United States all to plaintiff's damage in the sum of $250,000.00.'
 
 
 12
 Motions to dismiss the action were filed on behalf of the defendants Orlanski, Friedman and Zilberstein; on behalf of the defendants Bauman and the United Orthodox Rabbinate of Greater Los Angeles; on behalf of the defendant Etner; and on behalf of the defendant Glasner. The ground relied upon in all motions was that the complaint fails to state a claim upon which relief may be granted.
 
 
 13
 Various theories or reasons were advanced in the several motions seeking dismissal of the action on the ground above mentioned. Such theories or reasons may be summarized as follows:
 
 
 14
 (1) That defendant Glasner is entitled to immunity from liability on the ground that the overt acts alleged to have been done by him were in his official capacity as the Kosher Food Law Representative of the State of California, and for that reason the complaint fails to state a claim upon which relief can be granted as to him;
 
 
 15
 (2) That since the complaint does not allege that any defendant except Glasner holds any office or official connection with the State of California, no claim is stated against any of the other defendants for the reason that the Civil Rights Statute does not reach the alleged invasion of individual rights by other individuals;
 
 
 16
 (3) That since Glasner, as a public official of the State of California, is immune from liability such immunity attaches to all other defendants;
 
 
 17
 (4) That plaintiff has no standing to sue because the claimed detriment or injury was to the business of the corporation to which the rights, privileges and immunities of Section 1 of the Fourteenth Amendment do not extend;
 
 
 18
 (5) That the United Orthodox Rabbinate of Greater Los Angeles is an ecclesiastical body whose defendant-members perform a judicial function in the supervision of the dietary laws of the Jewish religion, and its rabbi members are clothed with the same immunity as trial and appellate judges of the State of California; and
 
 
 19
 (6) That the civil courts will not examine into the correctness of their decisions in that area.
 
 
 20
 This case is very similar to the case of Bonanno v. Thomas, 309 F.2d 320 (9th Cir. 1962). In that case four different and distinct reasons were advanced in support of a motion for dismissal of the action upon the ground that the complaint failed to state a claim upon which relief could be granted. In the Bonanno case the district court did not state which of the four reasons or theories were relied upon by the district court in dismissing the action. The judgment was reversed in the Bonanno case and the cause remanded for further proceedings. In that case Judge Hamley, speaking for this court, stated:
 
 
 21
 'It does not seem to us that either appellant or this court ought to be called upon to guess which ground was relied upon by the district court, or in the alternative to explore all grounds which were made the basis of the motion, in order to be sure we deal with the ground relied upon by the court. Such an appellate task is particularly inappropriate where, as here, Constitutional questions are at issue as to some but not all of the grounds on which the motion was based.'
 
 
 22
 In the Bonanno case, the court also pointed out that no opportunity to amend had been afforded the plaintiff and that it was of no consequence that no request to amend the pleading was made in the district court. (Sidebotham v. Robison, 216 F.2d 816, 826 (9th Cir. 1954).) The court in making its order for remission stated:
 
 
 23
 'Where a complaint is dismissed on the ground that it fails to state a claim, the order should also inform the plaintiff of the reason for dismissal so that he can make an intelligent choice as to amending. Griffin v. Locke, 9 Cir., 286 F.2d 514, 515 (1961).'The order of the district court in the instant case is as follows:
 
 
 24
 'The Court having found that good legal cause exists to support the Motions of the various defendants for dismissal of this action:
 
 
 25
 'It Is Ordered, Adjudged and Decreed that the above entitled action be and the same is hereby dismissed as to all defendants.'
 
 
 26
 No reason for dismissal of the action on the ground that the complaint fails to state a claim appears in the order or elsewhere in the record before us except that 'good legal cause' exists therefor.
 
 
 27
 The same reasons which required the remand in the Bonanno case are applicable to the instant case.
 
 
 28
 The order or judgment of dismissal is vacated and the cause is remanded to the District Court for further proceedings consistent with the views expressed herein.
 
 
 
 [1]
 '1983. Civil action for deprivation of rights
 'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'
 
 
 [2]
 '1343. Civil rights and elective franchise
 'The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 '(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
 '(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
 '(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
 '(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.'
 
 
 [3]
 383b. Kosher meats and meat preparations; sale and labeling regulations; false representations; punishment; kosher defined
 'Every person who with intent to defraud, sells or exposes for sale any meat or meat preparations, and falsely represents the same to be kosher, whether such meat or meat preparations be raw or prepared for human consumption, or as having been prepared under and from a product or products sanctioned by the orthodox Hebrew religious requirements; or falsely represents any food product, or the contents of any package or container, to be so constituted and prepared, by having or permitting to be inscribed thereon the words 'kosher' in any language; or sells or exposes for sale in the same place of business both kosher and nonkosher meat or meat preparations, either raw or prepared for human consumption, who fails to indicate on his window signs in all display advertising in block letters at least four inches in height 'kosher and nonkosher meats sold here'; or who exposes for sale in any show window or place of business as both kosher and nonkosher meat preparations, either raw or prepared for human consumption, who fails to display over each kind of meat or meat preparation so exposed a sign in block letters at least four inches in height, reading 'kosher meat' or 'nonkosher meat' as the case may be; or sells or exposes for sale in any restaurant or any other place where food products are sold for consumption on the premises, any article of food or food preparations and falsely represents the same to be kosher, or as having been prepared in accordance with the orthodox Hebrew religious requirements; or sells or exposes for sale in such restaurant, or such other place, both kosher and nonkosher food or food preparations for consumption on the premises, not prepared in accordance with the Jewish ritual, or not sanctioned by the Hebrew orthodox religious requirements, and who fails to display on his window signs in all display advertising, in block letters at least four inches in height 'kosher and nonkosher food served here' is guilty of a misdemeanor and upon conviction thereof be punishable by a fine of not less than fifty dollars, nor more than three hundred dollars, or imprisonment in the county jail of not less than thirty days, nor more than ninety days, or both such fine and imprisonment.
 'The word 'kosher' is here defined to mean a strict compliance with every Jewish law and custom pertaining and relating to the killing of the animal or fowl from which the meat is taken or extracted, the dressing, treatment and preparation thereof for human consumption, and the manufacture, production, treatment and preparation of such other food or foods in connection wherewith Jewish laws and customs obtain and to the use of tools, implements, vessels, utensils, dishes and containers that are used in connection with the killing of such animals and fowls and the dressing, preparation, production, manufacture and treatment of such meats and other products, foods and food stuffs.'