191 F.3d 983 (9th Cir. 1999)
 NORMAN YOURISH, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, Plaintiff-Appellant,
and
KENNETH YOURISH,ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, Plaintiff,
v.
CALIFORNIA AMPLIFIER; IRA CORON; DAVID NICHOLS; MICHAEL FERRON; ARTHUR HAUSMAN; WILLIAM McKENNA, Defendants-Appellees.
 No. 98-56932
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted July 15, 1999--San Francisco, California
Filed October 8, 1999
 
 [Copyrighted Material Omitted]
 Eric A. Isaacson, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, California, for the plaintiff-appellant.
 Daniel S. Floyd, Gibson, Dunn & Crutcher, Los Angeles, Caliornia, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Consuelo B. Marshall, District Judge, Presiding. D.C. No. CV-97-04293-CBM.
 Before: Charles Wiggins, Ferdinand F. Fernandez, and Sidney R. Thomas, Circuit Judges. Opinion by Judge Wiggins
 WIGGINS, Circuit Judge:
 
 
 1
 * Norman and Kenneth Yourish ("Plaintiffs") filed this class action on behalf of a class of investors who purchased California Amplifier, Inc. ("Cal Amp") common stock between September 12, 1995, and August 8, 1996. Plaintiffs allege that Cal Amp and its top insiders[1] (collectively "Defendants") made a series of false and misleading statements to securities analysts and the market to manipulate and inflate the price of Cal Amp common stock during the class period. The complaint asserted claims under S 10(b) and S 20(a) of the Securities and Exchange Act of 1934, see 15 U.S.C.SS 78j(b) & 78t(a), as well as under Rule 10b-5, see 17 C.F.R. S240.10b5.
 
 
 2
 Defendants filed a motion to dismiss the complaint on several grounds. Counsel for Plaintiffs and Defendants appeared at the hearing on the motion on February 23, 1998. Due to heavy rains that day, however, the district court judge was prevented from traveling to the courthouse when her train was canceled. The district judge's clerk informed the parties that Judge Marshall'stentative ruling was to grant the motion and allow ten days leave to amend.
 
 
 3
 After discussing the matter with Defendants, Plaintiffs agreed to waive oral argument on the motion and submit to the judge's tentative ruling if Plaintiffs were given sixty days to amend. After the clerk contacted the judge, who agreed to the stipulation, and relayed the information to the parties, Plaintiffs' counsel informed the clerk that a written order explaining the reasons for dismissal would be helpful. Although the judge's minute order dismissing the complaint with sixty days leave to amend was entered in the clerk's civil minutes, no written order ever issued.[2]
 
 
 4
 Plaintiffs never filed an amended complaint. On April 24, 1998, sixty days after the hearing was scheduled, Plaintiffs' counsel checked the court's docket. Although she discovered the civil minutes, she apparently did not contact the district court or opposing counsel. Instead, on May 15, 1998, Plaintiffs filed a motion styled as a Motion for Entry of A Written Order Re Dismissal of Complaint Without Prejudice and For Leave to Use State Discovery to Amend Complaint. Defendants filed a Motion for Entry of Order of Final Dismissal and Entry of Judgment based on Plaintiffs' failure to file an amended complaint within sixty days of the dismissal.
 
 
 5
 The district court granted Defendants' motion without oral argument, dismissing the case with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure for failing to obey the court's order to file an amended complaint within sixty days. The court also denied Plaintiffs' motion. Plaintiffs now timely appeal the dismissal of their case with prejudice to this court.
 
 II
 
 6
 The first issue we must resolve is whether Judge Marshall's "minute order" was an order, the noncompliance with which justified dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[3] We review the district court's dis-missal of a complaint pursuant to Rule 41(b) for abuse of discretion. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992). Whether or not the "minute order" was an order for purposes of Rule 41(b) is a question of law that we review de novo. We find that Judge Marshall's minute order, under the circumstances of this case, was an "order" within the meaning of Rule 41(b), the noncompliance with which gave Judge Marshall the discretion to dismiss the complaint.
 
 
 7
 Under Ninth Circuit precedent, when a plaintiff fails to amend his complaint after the district judge dismisses the complaint with leave to amend, the dismissal is typically considered a dismissal for failing to comply with a court order rather than for failing to prosecute the claim. See id. at 1260 ("In this case we address whether the district court abused its discretion in dismissing Ferdik's case because he failed to obey the court's order requiring him to refile a second amended complaint . . . in a timely manner or face dismissal of his case.") (emphasis added)[4].
 
 
 8
 Judge Marshall dismissed the Plaintiffs' complaint with prejudice for failing to comply with a court order. See Order Filed on Sept. 21, 1998, at 2 ("When a party fails to comply with any district court order within the time period given for compliance, the district court may dismiss the action pursuant to Fed. R.Civ. P. 41(b).").
 
 
 9
 Although this court has never addressed the issue of whether any particular formalities are necessary for an order that serves as the basis of a Rule 41(b) dismissal, we have addressed the closely analogous issue of whether or not particular formalities are necessary in order for a court's discovery order to serve as the basis of Rule 37(b)(2) sanctions for a party's noncompliance with a court's discovery order.[5] In Henry v. Sneiders, 490 F.2d 315 (9th Cir. 1974), a district court entered a default judgment against a defendant after she refused to produce records that were ordered produced by the district judge. On appeal, we affirmed the default judgment as a Rule 37(b)(2) sanction for noncompliance with a court order. In a claim that was similar to Plaintiffs' claim in the current appeal, the plaintiff argued that "[s]ince default under Fed. R. Civ. P. 37(b)(2) is permitted only for refusal to comply with a court order for discovery, . . . default was improper." Henry, 490 F.2d at 318. We rejected this argument even though the district court had not issued a written order directing the defendant to produce the records. We affirmed the default judgment, notwithstanding the absence of a written order, because "[i]t [was] clear from an examination of the oral proceedings . . . that the district court had orally ordered appellant to produce the records" and "[w]here oral proceedings unequivocally give a litigant notice that certain documents are to be produced, the absence of a written order does not preclude the entry of a default judgment for failure to comply." Id. (emphasis added). We feel that Henry's reasoning is equally applicable in this case. Just as an oral order is an "order," the noncompliance with which justifies Rule 37(b)(2) sanctions, Judge Marshall's minute order was an "order," the disobedience of which justified dismissal under Rule 41(b).
 
 
 10
 Relying upon inapposite precedents that concern Rule 58's separate document requirement for dispositive orders,[6] Plaintiffs contend that Judge Marshall's minute order was insufficient to serve as the basis of her later dismissal for failing to amend the complaint. Plaintiffs' argument is premised upon this court's opinion in Calhoun v. United States , 647 F.2d 6, 8 (9th Cir. 1981), and its progeny. In Calhoun , we held that a minute order noted in the clerk's civil docket did not satisfythe separate document requirements of Rule 58. See Calhoun, 647 F.2d at 9. Without strict compliance with the separate document requirement, the court found that it was impossible to determine whether a notice of appeal was timely filed. See id. at 10.
 
 
 11
 Plaintiffs' reliance on Calhoun and its progeny, however, is misplaced. As Judge Marshall noted, Calhoun 's mechanical application of the separate document requirement of Rule 58 only concerns dispositive orders, from which a party must timely file a notice of appeal. As Henry makes clear, an oral minute order, noted in the clerk's docket, can serve as the basis for a sanction for noncompliance when the partieshave knowledge of the order's contents. Although Henry involved a party's disobedience of a discovery order, we feel that its reasoning is more analogous to this case than the dispositive orders in Calhoun and its progeny, which involved deadlines for filing a notice of appeal. We therefore conclude that Plaintiffs' noncompliance with Judge Marshall's minute order, which confirmed the parties' stipulation, granted Judge Marshall the discretion to dismiss the case under Rule 41(b).[7]
 
 III
 
 12
 The next issue we must address is the propriety of Judge Marshall's dismissal of the complaint without informing Plaintiffs of the reason for the dismissal. We review the district court's dismissal of an action for failure to comply with the court's order requiring submission of an amended complaint in a timely manner for an abuse of discretion. See Ferdik, 963 F.2d at 1260. Relying primarily upon this court's decision in Bonanno v. Thomas, 309 F.2d 320 (9th Cir. 1962), Plaintiffs claim that the district judge abused her discretion in dismissing the complaint because the district judge failed to inform them of the reason for dismissal. We find that Judge Marshall did not abuse her discretion in this case because Plaintiffs had consented to the tentative ruling which they now attack. Because of Plaintiffs' consent to the tentative ruling, Judge Marshall was not obligated to provide them with the type of explanation envisioned in Bonanno and did not abuse her discretion by failing to provide them with an explanation.
 
 
 13
 In Bonanno, the district court dismissed a plaintiff's amended complaint by means of a minute order. The minute order did not explain why the complaint was dismissed. On appeal, we held that the district court erred in failing to identify which of the defendants' four grounds for dismissal the court relied upon in dismissing the case. After indicating that if the district court had relied upon three of the proposed four grounds the dismissal would have been an abuse of discretion because those grounds were not valid legal arguments, we explained that "[w]here a complaint is dismissed on the ground that it fails to state a claim, the order should also inform the plaintiff of the reason for dismissal so that he can make an intelligent choice as to amending." Bonanno, 309 F.2d at 321. Plaintiffs rely upon this requirement to claim that Judge Marshall abused her discretion by failing to provide an explanation of the reason for her dismissal of the complaint.[8]
 
 
 14
 At first blush, Bonanno's requirements appear mandatory and seem quite severe. A review of our precedents, however, indicates that we have not always been troubled by a district court's failure to explain the reasons for dismissal. See, e.g., Berkic v. Crichton, 761 F.2d 1289, 1291 (9th Cir. 1985)("Although the court's order did not state the reason for the dismissal, the district judge explained at the hearing on the defendants' motion to dismiss that the plaintiff had failed to state a claim on which relief could be granted because he could not establish the requisite element of `secondary meaning.' "); Donoghue v. County of Orange, 848 F.2d 926, 929 (9th Cir. 1988) (noting that "[t]he district court did not explain its reason for dismissing Claims 3-12").
 
 
 15
 Because our precedents indicate that Bonanno's requirements do not apply in all cases, we do not believe that Judge Marshall was required to provide an explanation of her reasons for dismissal in this case because Plaintiffs consented to the dismissal without an explanation of the tentative ruling. We have held that the parties' stipulation excuses a court from similar requirements. See Taylor Rental Corp. v. Oakley, 764 F.2d 720, 721 (9th Cir. 1985) (excusing district court's failure to comply with Rule 58's separate document requirement and Rule 79(a)'s civil docket requirements because "[t]he parties herein stipulated that the court need not issue a formal order denying the post-trial motions"). We have also excused the district court's compliance with these types of requirements when the parties were aware of the information of which the rules seek to inform them. See id. ("The Humphreys, however, were fully aware even without a separate document, that the order had been entered against them."). In this case, Plaintiffs consented to the dismissal without the requisite explanation. Presumably they were aware of the reasons for the dismissal, thus obviating the protections afforded by Bonanno. Moreover, because of that stipulation, Judge Marshall could hardly be expected to provide a separate written order, which Plaintiffs had not indicated a need for at the time they consented to the tentative ruling.
 
 
 16
 Plaintiffs' brief suggests that they "agreed to forgo oral argument if [the plaintiffs] received 60 days from issuance of a written order to file an amended complaint. " Plaintiffs' Opening Brief at 2 (emphasis original). A closer reading of Plaintiffs' counsels' affidavits, however, reveals that the parties agreed to the entry of dismissal, informed the court, and then, after the court agreed to the parties' stipulation of 60 days leave to amend, Plaintiffs' counsel informed the district court's law clerk that "it would be helpful in providing guidance for the purposes of amending the complaint if the Court would specify its reasons for granting the motion to dismiss when it issued its written order on the motion." Declaration of Katherine L. Black at 2. This chronology indicates that Plaintiffs stipulated to dismissal without conditioning that stipulation on an explanation of the defects in the complaint. Therefore, Judge Marshall did not abuse her discretion in dismissing the complaint without providing an explanation.
 
 IV
 
 17
 The next issue that we must address is whether Judge Marshall's dismissal of this action, with prejudice, was an excessive sanction for Plaintiffs' failure to timely amend the complaint. We review for an abuse of discretion "a district court's dismissal of an action for failure to comply with the court's order requiring submission of an amended complaint in a timely manner." Ferdik, 963 F.2d at 1260. We will not disturb the trial court's dismissal without a " `definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " Id. (quoting Malone v. UnitedStates Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987)). Our review of the record indicates that Judge Marshall did not abuse her discretion by dismissing the complaint with prejudice.
 
 
 18
 Under our precedents, in order for a court to dismiss a case as a sanction, the district court must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998) (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)). We "may affirm a dismissal where at least four factors support dismissal, . . . or where at least three factors `strongly' support dismissal." Id. (quoting Ferdik, 963 F.2d at 1263). "Although it is preferred, it is not required that the district court make explicit findings in order to show that it has considered these factors and we may review the record independently to determine if the district court has abused its discretion." Ferdik, 963 F.2d at 1261.
 
 
 19
 In the order granting Defendants' motion for entry of final dismissal, the district court considered each of these five factors, finding that all of them favored dismissal except for the public policy preference for resolution of actions on the merits. Our review of the record indicates that three factors strongly support dismissal of Plaintiffs' complaint.
 
 
 20
 1. Interest in Expeditious Resolution of Litigation
 
 
 21
 The district court found that"[d]ismissal in this instance serves the public interest in expeditious resolution of litigation as well as the court's need to manage the docket because Plaintiffs' noncompliance has caused the action to come to a complete halt, thereby allowing Plaintiffs to control the pace of the docket rather than the Court." Order Filed on Sept. 21, 1998, at 3. As we have indicated before, the public's interest in expeditious resolution of litigation always favors dismissal. Plaintiffs contend that the delay involved in this case was not so great as to favor the public's interest in expeditious resolution of litigation. Notwithstanding Plaintiffs' assertion, we have previously held that "[d]istrict judges are best situated to decide when delay in a particular case interferes with docket management and the public interest." Ash v. Cvetkov, 739 F.2d 493, 496 (9th Cir. 1984). Given the district court's superior position in evaluating the public interest in expeditious resolution of a particular case, we agree with Judge Marshall's finding that this factor strongly favors dismissal.
 
 2. Court's Need to Manage Its Docket
 
 22
 The district court found that its interest in managing its docket favored dismissal because Plaintiffs' failure to amend had caused "the action to come to a complete halt " and had allowed the "Plaintiffs to control the pace of the docket rather than the Court." Order Filed on Sept. 21, 1998, at 3. Plaintiffs contend that the court's need to manage its docket does not support dismissal because they filed an order seeking a written order seeking clarification of the grounds for the original dismissal just three days after the amended complaint was due. This argument misunderstands the interest at stake in this factor. Plaintiffs filed a motion seeking a written order, rather than an amended complaint, and filed the motion three days after the amended complaint was due to be filed. Plaintiffs had already obtained sixty days in which to file the amended complaint, rather than the ten days that the court had tentatively intended to grant. As the district court found, instead of complying with that sixty day deadline, or if they determined that they needed a written order, filing their motion within the sixty day deadline, Plaintiffs tardily filed their motion for a written order, requiring the district court to devote further time and resources to this matter rather than to the merits of an amended complaint: "Plaintiffs also submitted to the tentativeruling of this Court, and any time after receiving the tentative ruling Plaintiffs could have filed this motion if they were unclear as to this Court's determination." Order Filed on Sept. 21, 1998, at 4. Plaintiffs contend that they thought it was clear that they would receive sixty days from entry of a formal written order. But the district court found that "Plaintiffs were made aware at the hearing on February 23, 1998, that it had sixty days in which to file an amended complaint." Id. at 4. This is a finding of fact by the district court, to which we afford great deference. See Primus Automotive Financial Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) ("The district court has `broad fact-finding powers' with respect to sanctions, and its findings warrant `great deference.' ") (quoting Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1366 (9th Cir. 1990) (en banc)). Based upon our review of the record, we accept Judge Marshall's factual finding that Plaintiffs knew that they were required to file the amended complaint within sixty days rather than within sixty of the issuance of a written order as they claim. Because the district judge was in a superior position to evaluate the effects of delay on her docket, see Ash , 739 F.2d at 496, we find that this factor strongly favors dismissal.
 
 3. Risk of Prejudice to the Defendant
 
 23
 The district court found that the risk of prejudice to Defendants favored dismissal: "Dismissal also prevents the risk of prejudice to Defendants in that Defendants will no longer be parties to an action that fails to state a claim." Order Filed on Sept. 21, 1998, at 3. We believe that this analysis reveals a misunderstanding of this factor. Whenever a court dismisses a complaint with leave to amend, if the district court does not finally dismiss the action the defendant would be a "part[y] to an action that fails to state a claim." If this were a valid form of prejudice, it would render this factor a nullity. In the closely-related context of dismissal for failure to prosecute, we have indicated that the pendency of the lawsuit is not sufficiently prejudicial itself to warrant dismissal. See Ash, 739 F.d at 496 ("Cvetkov argues that the mere pendency of a law suit is prejudicial. While it may be prejudicial, it cannot, by itself, be considered prejudicial enough to warrant dismissal . . . . Limited delays and the prejudice to a defendant from the pendency of a lawsuit are realities of the system that have to be accepted, provided the prejudice is not compounded by `unreasonable' delays.").
 
 
 24
 Nevertheless, we believe that the risk of prejudice to Defendants makes this factor strongly support dismissal. We have indicated that the risk of prejudice to the defendant is related to the plaintiff's reason for defaulting in failing to timely amend. See Malone, 833 F.2d at 131 (indicating that "we place particular reliance on the district court's determination that Malone's excuse for her conduct was groundless" because "[w]hether prejudice is sufficient to support an order of dismissal is in part judged with reference to the strength of the plaintiff's excuse for the default"). In this case, Plaintiffs have a very poor reason for their default. They claim that they expected a written order explaining why their complaint was dismissed. But when a written order was not forthcoming, they did nothing. Only after the sixty days had passed did they file their motion for a written order, even though they had learned of the confusion twenty days earlier.[9] Consequently, we find that Plaintiffs'paltry excuse for his default on the judge's order indicates that there was sufficient prejudice to Defendants from the delay that this factor also strongly favors dismissal.
 
 
 25
 4. Public Policy Favoring Disposition On the Merits
 
 
 26
 The district court conceded that "public policy strongly favors disposition of actions on the merits " but felt that "this consideration is outweighed by the four other factors which support dismissal of this action." Order Filed on Sept. 21, 1998, at 3. Defendants do not advance any arguments why public policy would not favor resolution of this action on the merits.
 
 5. Less Drastic Alternatives
 
 27
 The district court indicated that it "not only considered but tried less drastic measures such as allowing Plaintiffs to amend their complaint within sixty days at the time Defendants' 12(b)(6) motion to dismiss was granted." Id. at 3. Plaintiffs correctly argue that this analysis was erroneous because dismissing the complaint with leave to amend wasnot a sanction in response to Plaintiffs' failure to obey a court order. It was Plaintiffs' failure to obey the order allowing them sixty days to amend for which the district court dismissed the case with prejudice. Therefore, the district court's granting Plaintiffs leave to amend was not a lesser sanction because they had not yet disobeyed the court's order. Relying upon Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981), Defendants contend that allowing a plaintiff to replead is a less drastic alternative. However, allowing the plaintiff to replead is only a less drastic alternative to dismissal once he has already disobeyed a court order. In this case, the district court did not give Plaintiffs time to file an amended complaint, and then, when they failed to file an amended complaint within that time, it did not grant them additional time to replead instead of dismissing the action with prejudice. Only in that situation would a district court's grant of time to amend be considered a less drastic alternative to dismissal with prejudice. Therefore, we believe that this factor does not favor dismissal.
 
 
 28
 Because we have found that three factors strongly favor dismissal, we feel that the district court did not abuse its discretion in dismissing Plaintiffs' case for failing to amend in a timely fashion. Although dismissal was harsh, we do not have a "definite and firm conviction" that the district court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. " Ferdik, 963 F.2d at 1260.
 
 V
 
 29
 The district court indicated that the dismissal of the complaint was for failure to comply with FED. R. CIV. P. 9. We have previously indicated that a plaintiff's failure to file an amended complaint is not the disobedience of a court order dismissing a complaint with leave to amend where the original dismissal was erroneous. See McKeever v. Block, 932 F.d 795, 797 (9th Cir. 1991) ("The refusal to file a second amended complaint would not be unreasonable if the first amended complaint was dismissed erroneously."); cf. Eldridge v. Block, 832 F.2d 1132, 1137-1138 (9th Cir. 1987) (considering merits of plaintiff's filing). Therefore, we must consider the merits of the district court's dismissal of the complaint for failure to plead fraud with particularity as required by Rule 9 of the Federal Rules of Civil Procedure.
 
 
 30
 We review de novo a dismissal for failure to allege facts of fraud with particularity. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987). We therefore review the complaint's factual allegations de novo to determine whether the complaint pleaded facts with the requisite particularity. We agree with the district court that the complaint does notsatisfy Rule 9(b)'s particularity requirements.
 
 
 31
 Our precedents make clear that Rule 9(b) applies to actions brought under the federal securities laws. See In re GlenFed Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1994) (en banc). Under Rule 9(b), "the statement of the claim must . . . aver with particularity the circumstances constituting the fraud." Id. This requires that, in order for a complaint to allege fraud with the requisite particularity, "a plaintiff must set forth more than the neutral facts[10] necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." Id. at 1548.
 
 
 32
 Because a plaintiff "must set forth what is false or misleading about [the] statement," Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995) (quoting GlenFed, 42 F.3d at 1548), he must "set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made." GlenFed , 42 F.3d at 1549. This falsity requirement can be satisfied "by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants." Id. (footnote omitted).
 
 
 33
 In this case, Plaintiffs allege that Defendants made representations regarding (1) Cal Amp's MultiCipher and MultiCipher Plus product lines;[11] (2) Cal Amp's wireless cable product sales;[12] (3) sales of Cal Amp's satellite TV receiver products;[13] (4) Cal Amp's international business;[14] (5) CalAmp's gross profit margins;[15] and (6) Cal Amp's revenue and earnings per share prospects.[16] Plaintiffs primarily attempt to satisfy the particularity requirements by alleging that Defendants knew that these statements were false when made solely because of the existence of "true facts, which were known only to defendants due to their access to confidential nonpublic information about California Amplifier and which they concealed from the public." Complaint at P 42. Plaintiffs also attempt to establish the falsity of statements about MultiCipher sales in Asia by means of a later statement by Coron that "we ended last fiscal year and through the first quarter with some very heavy shipments to Southeast Asia on new systems that were being launched; and we knew that was not going to repeat." Complaintat P 60. Finally, Plaintiffs attempt to establish the falsity of various optimistic statements about MultiCipher Plus by means of the temporal proximity of Cal Amp's later disclosure that shipments of MultiCipher Plus would be delayed indefinitely. We find that none of the factual allegations regarding these purported misrepresentations sufficiently explain why the statements were false when made.
 
 1. Confidential Non-Public Information
 
 34
 With the allegations based upon the alleged "confidential non-public information," the parties concentrate primarily upon whether the substance of the "true facts" shows that the substance of the various statements was false. In doing so, the parties have skipped over the initial inquiryof whether Plaintiffs have pleaded the existence of the "confidential non-public information" with the requisite particularity. Our review of the complaint's factual allegations reveals that Plaintiffs' allegations regarding the existence of this non-public information do not satisfy the particularity requirements of Rule 9(b).
 
 
 35
 In GlenFed, we indicated that a plaintiff can satisfy Rule 9(b)'s particularity requirements for alleging the falsity of a statement "by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants." GlenFed, 42 F.3d at 1549 (footnote omitted). In this case, Plaintiffs primarily attempt to show the falsity of the various representations by alleging the existence of confidential non-public information that was available to Defendants, but they provide no details about this alleged information to Defendants, other than the substance of "true facts" revealed by the information. They allege none of the particulars regarding the non-public information, such as: what medium contained the information (e.g., internal reports); when the information was made available to people inside the company; which of the Defendants the information would have been available to; or when they were aware of the information.
 
 
 36
 Although we indicated that plaintiffs could allege the falsity of a given statement by pointing to contemporaneous information, such as internal reports, that was inconsistent with the statement, we have not previously had occasion to consider how a plaintiff can plead the existence of such contemporaneous information. The GlenFed opinion, however, indicates that Plaintiffs' general claims of "confidential nonpublic information" that revealed "true facts " inconsistent with various statements are clearly insufficient.
 
 
 37
 In GlenFed, we rejected the plaintiffs' claim that Rule 9(b) merely requires a plaintiff to plead the "facts necessary to identify the transaction." GlenFed, 42 F.3d at 1547. We rejected this contention because, although it would furnish the defendants with notice, it would collapse Rule 9(b) into Rule 8(a). Instead, we held that "Rule 9(b) clearly imposed an additional obligation on plaintiffs: the statement of the claim must also aver with particularity the circumstances constituting the fraud." Id.
 
 
 38
 In essence, Plaintiffs' complaint merely pleads sufficient facts to identify various transactions, a reading of Rule 9(b) that we rejected in GlenFed. By relying upon the existence of alleged "confidential non-public information," without any other details about the existence of the alleged information, Plaintiffs merely identify certain statements that they claim were misrepresentations, without providing particularized facts about the circumstances constituting the fraud. If such unsupported general claims were sufficient to satisfy Rule 9(b)'s particularity requirements, plaintiffs could eliminate the falsity requirement entirely because they could merely identify a given statement by the defendant and then simply allege that the substance of the statement was contradicted by contemporaneous information contained in internal reports. Thus any statement could be alleged to have been false atthe time made. Such a standard would clearly be inconsistent with our requirement that "circumstances indicating falseness be set forth." GlenFed, 42 F.3d at 1548. When one of the circumstances indicating falseness is the alleged existence of contemporaneous information inconsistent with a particular statement that was allegedly known only to the defendants, some detail about the alleged information, other than that its substance contradicted the substance of the identified statement, must be provided.
 
 
 39
 Although our precedents have not made clear precisely what level of particularity is required regarding allegations of contemporaneous information, GlenFed provides some guidance. In GlenFed, we indicated that the complaint satisfied the particularity requirements. We nevertheless indicated that some aspects of the complaint did not satisfy Rule 9(b)'s requirement that a complaint plead with particularity the circumstances surrounding the fraud. We indicated that the complaint's allegations about poor financial condition and lack of financial controls were insufficient to satisfy Rule 9(b). See GlenFed, 42 F.3d at 1551 ("With respect to these claims, if this were all that the complaint contained, it would fall short of compliance with Rule 9(b)."). We also indicated that the complaint's allegations regarding GlenFed's poor financial condition identified particular statements but did not explain "the reasons for their falsity," in part because the complaint did not allege "what information within GlenFed revealed that foreclosures and defaults were increasing." See id. at 1552. We indicated that without this type of particularized allegation, we thought that "the drafters of the complaint often seem[ed] to have done little more than copy verbatim language from GlenFed's public filings, and then proclaim at more or less regular intervals that the statements were false." See id.
 
 
 40
 Our precedents more clearly establish the types of allegations that would satisfy Rule 9(b). In GlenFed , for example, we found that allegations regarding representations concerning the disposition of GlenFed had been pleaded with the requisite particularity. In those allegations, the complaint had indicated that statements at board meetings and information contained in GlenFed's Strategic Plan as well as a position paper prepared as part of the Strategic Plan were inconsistent with various statements made by the defendants. See id. at 1550. Likewise, we found that the complaint's allegations regarding the adequacy of internal controls and loan loss reserves were pleaded with the requisite particularity where they alleged the existence of non-public information contained in reports from GlenFed's Internal Audit Department and a proposal submitted by an accounting firm. See id. at 1550. While the complaint in our case alleges the existence of similar non-public information, it provides none of the details that the GlenFed complaint provided.
 
 
 41
 Although we have not articulated a precise standard for determining whether a complaint's allegations concerning the existence of contemporaneous non-public information satisfies Rule 9(b)'s particularity requirements, and do not endeavor to do so today, our sister circuits have addressed this issue on several occasions and their decisions provide useful guidance. In San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801 (2d Cir. 1996) ("San Leandro"), the Second Circuit considered a complaint that alleged that representations that "retail sales were strong" were false when made because of the existence of confidential sales reports that revealed a larger decline in sales than Philip Morris had previously announced. See San Leandro, 75 F.3d at 812. The court found that the alleged existence of the inconsistent confidential sales reports did not satisfy Rule 9(b)'s particularity requirements because the "Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss." Id. Similarly the Seventh Circuit, in Arazie v. Mullane, 2 F.3d 1456 (7th Cir. 1993), considered a complaintthat contained "scanty" references to "unreleased or internal information that allegedly contradict[ed] the public statements " that the complaint claimed were misrepresentations. Arazie , 2 F.3d at 1466. The court found that the complaint's assertion that "Bally's internal documents admitted" various facts did not satisfy Rule 9(b)'s particularity requirements because the complaint did not "indicate who prepared the projected figures, when they were prepared, how firm the numbers were, or which Bally officers reviewed them." Id. at 1467.
 
 
 42
 Based upon our own precedents, and the guidance we have obtained from our sister circuits' consideration of this issue, we conclude that the complaint does not allege with sufficient particularity the details about the existence of the alleged "non-public confidential information" that revealedthe "true facts" that were inconsistent with the various statements by the Defendants. Although we do not attempt to define the precise threshold at which a complaint sufficiently alleges the details of the existence of such non-public information, we agree with the Second Circuit that a complaint's unsupported general claim of the existence of non-public information that is inconsistent with the substance of identified representations is insufficient under Rule 9(b). See San Leandro, 75 F.3d at 812.
 
 2. International Sales
 
 43
 We also find that the allegations concerning the statements about Asian sales do not satisfy Rule 9(b)'s particularity requirements. Our analysis of the allegations regarding these statements, however, requires a second level of analysis because in addition to alleging that the statement was false when made because of "true facts" revealed by non-public information, the complaint also alleges that Coron's October 1996 statement indicates that it was false when made. In GlenFed, we indicated that a complaint can establish that a statement was false when made by alleging "[a ] later statement by the defendant along the lines of `I knew it all along.' " GlenFed, 42 F.3d at 1549 n.9 (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 26-27 (1st Cir. 1992)). Plaintiffs allege that in October 1996 Coron stated that"[w]e ended last fiscal year and through the first quarter with some very heavy shipments to Southeast Asia on new systems that were being launched, and we knew that was not going to repeat." Complaint at P 60. The question is whether this statement by Coron is a statement similar to "I knew it all along," establishing the falsity of an earlier statement by means of a later statement by the defendant.
 
 
 44
 Plaintiffs contend that Coron's October 1996 statement shows the falsity of earlier statements about the strength of Cal Amp's international sales. For example, the complaint alleged that on November 20, 1995, Coron and Ferron had represented to securities analysts in a conference call that "[t]he large IBC contract was likely to result in significant follow-along business for California Amplifier of $1-$2 million per year during the next year." Complaint atP 33. A closer examination of Coron's October statement, however, shows that it is nothing like the incriminating statement we envisioned in GlenFed. All that Coron's statement reveals is that Defendants did not expect to repeat the $7 million order associated with the IBC launch and could only expect a more modest $1 to $2 million in follow-on sales per year to IBC over the following two years. In the November 30, 1995, Robertson Stephens report, for example, Cal Amp indicated that "[w]e estimate that the $7.0 million contract meets IBC's needs up to 100,000 subscribers, which they have currently. As the subscriber base expands beyond 100,000, IBC should order incremental antennas from CAMP. We estimate the follow-on opportunity over the next two years with IBC could be an additional $1 to $2 million per year." Complaint at P 34. The complaint never alleges a statement by Defendants that would indicate such "heavy shipments" as the $7 million system launch order from IBC were expectedto repeat in Southeast Asia. Only such a specific statement could be contradicted by Coron's October 1996 statement. Without such a specific statement, the October 1996 statement does not approach the "I knew it all along" admission envisioned in GlenFed. Therefore, the complaint's allegations regarding Cal Amp's international business do not satisfy Rule 9(b)'s particularity requirements. "[I]t is clearly insufficient for plaintiffs to say that [a] later, sobering revelation[ ] make[s] [an] earlier, cheerier statement a falsehood. " GlenFed, 42 F.3d at 1541.
 
 
 45
 3. Temporal Proximity of MultiCipher Plus Disclosure
 
 
 46
 Plaintiffs also allege that various statements by Defendants about their optimistic expectations for MultiCipher Plus and its impact on Cal Amp's revenues were false when made. Plaintiffs primarily attempt to establish the falsity of these statements by relying upon the existence of non-public confidential information establishing that Defendants were aware that MultiCipher Plus had serious design problems and would encounter a high rate of failure. As discussed supra, we find that the complaint's unsupported general claims about the existence of this non-public information are insufficient to satisfy the requirements of Rule 9(b).
 
 
 47
 In addition to the allegedly inconsistent "true facts" contained in non-public information, Plaintiffs allege that Defendants' representations through June and July of 1996 were false because on August 8th, Cal Amp admitted that shipment of MultiCipher Plus would be "delayed indefinitely." Complaint at P 59. Relying on our decisions in Fecht v. Price Co., 70 F.3d 1078 (9th Cir. 1995) and Cooper v. Pickett, 137 F.3d 616 (9th Cir. 1998), Plaintiffs claim that the temporal proximity of the August disclosure provides circumstantial evidence that the June and July optimistic statements were false when made. We find, however, that the temporal proximity of the August disclosure to the June and July statements, without more, is insufficient to satisfy Rule 9(b).
 
 
 48
 Plaintiffs' reliance on Fecht and Cooper, is misplaced. We have allowed the temporal proximity of an allegedly fraudulent statement or omission and a later disclosure to bolster a complaint, see, e.g., Fecht, 70 F.3d at 1083-84, but we have never allowed the temporal proximity between the two, without more, to satisfy the requirements of Rule 9(b). Cf. Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1225 (1st Cir. 1996) ("While the short time frame between an allegedly fraudulent statement or omission and a later disclosure of inconsistent information does not, standing alone, provide a sufficient factual grounding to satisfy Rule 9(b), .. . there is nothing in Rule 9(b) that precludes consideration of such temporal proximity as a circumstance potentially bolstering the complaint's claims of fraud.") (emphasis added) (citing Arazie, 2 F.3d at 1467-68; Fecht, 70 F.3d at 1083-84). Mere "temporal proximity between positive statements stressing a firm's strengths and announcements of poor economic performance," without more, "do[es] not create an inference that the earlier statements were fraudulent." Arazie, 2 F.3d at 1467-68.
 
 
 49
 In this case, the temporal proximity between the June and July statements and the August 8th disclosure alone would have to be sufficient to satisfy Rule 9(b)'s requirement because there are no other adequately pleaded allegations for the temporal proximity to bolster. We therefore conclude that because the complaint's remaining allegations do not comport with the requirements of Rule 9(b), the temporal proximity of the statements about MultiCipher Plus and the August 8th disclosure, in and of itself, is insufficient.
 
 
 50
 After reviewing the complaint's factual allegations, we conclude that Judge Marshall's dismissal of the complaint for failing to satisfy the requirements of Rule 9(b) was correct because none of the complaint's factual allegations satisfy Rule 9(b)'s requirement that a complaint averwith particularity the "circumstances constituting fraud."[17]
 
 
 51
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The individual defendants are (1) Ira Coron, Cal Amp's chairman and chief executive officer; (2) David Nichols, Cal Amp's executive vice president of operations; (3) Michael Ferron, Cal Amp's chief financial officer and vice president of finance; (4) Arthur Hausman, a Cal Amp director; and (5) William McKenna, a Cal Amp director.
 
 
 [2]
 The civil minutes provide: "Defendants' motion to dismiss class action complaint is granted with leave to amend. Amended complaint shall be filed within 60 days, response to Amended Complaint shall be filed 20 days thereafter. Plaintiffs' motion to strike exhibits taken off calendar."
 Inexplicably, these civil minutes were entered in the docket twice, once on March 9, 1998, and again on March 12, 1998.
 
 
 [3]
 Rule 41(b) provides in relevant part: "For failure of the plaintiff to prosecute or to comply with . . . any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." FED. R. CIV. P. 41(b).
 
 
 [4]
 This approach is somewhat problematic because a plaintiff's failure to amend a complaint is not easily described as disobeying a court order because the plaintiff has the right simply to allow the complaint to be dismissed. See, e.g., Mann v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 488 F.2d 75, 76 (5th Cir. 1973) ("Had the District Judge intended what he wrote literally -that the action was being dismissed because the March order had been `disobeyed' -he would have been guilty of an abuse of his Rule 41(b) discretion to dismiss. Dismissal of a case for disobedience of a court order is an exceedingly harsh sanction which should be imposed only in extreme cases, and then after exploration of lesser sanctions . . . . Failure to amend a complaint after it has been dismissed with leave to amend is not such an extreme case of disobedience, if it is disobedience at all."); Johnson v. Boyd-Richardson Co., 650 F.2d 147, 149 (8th Cir. 1981) (same).
 
 
 [5]
 Rule 37(b)(2) provides in relevant part: "If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . ." FED. R. CIV. P. 37(b)(2).
 
 
 [6]
 Rule 58 requires that "[e]very judgment shall be set forth on a separate document" and indicates that "[a] judgment is effective only when so set forth and when entered as provided in Rule 79(a). " FED. R. CIV. P. 58.
 
 
 [7]
 At oral argument, Plaintiffs conceded that their disobedience of an oral order issued from the bench would have justified dismissal under Rule 41(b). We do not believe that an oral order is required where, as in this case, parties stipulate to a court's tentative ruling in exchange for additional time to amend the complaint. Judge Marshall found that "Plaintiffs were made aware at the hearing on February 23, 1998, that it [sic] had sixty days in which to file an amended complaint. " Order Filed on Sept. 21, 1998, at 4. This finding of fact is not clearly erroneous. Therefore, because Plaintiffs were aware of the requirements of the court's minute order, the order "unequivocally gave the litigant[s] notice" of the requirements of the court's order. Henry, 490 F.2d at 318. We see no reason why this minute order is different from an oral order.
 
 
 [8]
 The Bonanno court's requirement that the district court provide some explanation of the grounds for dismissal originated in an earlier Ninth Circuit opinion, Griffin v. Locke, 286 F.2d 514 (9th Cir. 1961). In Griffin, a district court dismissed a plaintiffs's complaint by means of a minuteorder. The minute order did not indicate the particular ground relied upon by the district court but gave the plaintiff thirty days leave to amend the complaint. On appeal, we held that the district court erred because it had not explained the basis of the dismissal. We found that the complaint stated at least one valid claim. We therefore vacated the dismissal and remanded the case to the district court with instructions to enter an order apprising the plaintiffs of the ground or grounds for dismissal and allowing them time to amend the complaint. See Griffin, 286 F.2d at 515.
 One final Ninth Circuit case addressed this line of reasoning. In Erlich v. Glasner, 352 F.2d 119 (9th Cir. 1965), the district court dismissed a plaintiff's complaint, without leave to amend. The only reason for dismissal offered in the district court's order was that "good legal cause exists" to dismiss the complaint. See Erlich , 353 F.2d at 123. Relying on Bonanno, we vacated the judgment of dismissal and remanded to the district court. See id.
 
 
 [9]
 According to Plaintiffs' counsels' affidavits, Plaintiffs' counsel discovered the civil minute entries on April 24, 1998, 43 days after the latest entry of the civil minutes in the clerk's docket (the civil minutes were entered twice, once on March 9th and again on March 12th), and, perhaps coincidentally, 60 days after Plaintiffs' consented to the dismissal of the complaint. Although the civil minute entries indicated that an amended complaint was to be filed "within 60 days," rather than within 60 days after the filing of a written order, Plaintiffs did not contact the district court, the court's clerk, or opposing parties' counsel. Instead, Plaintiffs' counsel waited twenty days to contact the court by means of a motion for a written order of dismissal.
 
 
 [10]
 These "neutral facts" involve the "time, place, and content of an alleged misrepresentation." Id. at 1547-1548.
 
 
 [11]
 The alleged representations included that (a) the demand for MultiCipher was "very strong" and that Cal Amp was enjoying "high demand . . . around the world;" (b) MultiCipher Plus had been successfully Beta tested; (c) MultiCipher Plus "will reinforce California Amplifier's position as a leader" and "will ship;" and (d) MultiCipher Plus had been successfully introduced and was being sold to several wireless cable TV companies. Complaint at P 6.
 
 
 [12]
 The alleged representations included that demand from domestic markets continued to be "very strong" and that Cal Amp was experiencing "strong demand" worldwide for its "appealing and expanding product line." Complaint at P 6.
 
 
 [13]
 The alleged representations included that Cal Amp's sales of Ku-band products would lead to growth in sales in this area throughout F97-F98. Complaint at P 6.
 
 
 [14]
 The alleged representations included that Cal Amp was enjoying "increased international demand" and expected large sales of Direct Broadcast Satellite downconverter products in Australia and Saudi Arabia as well as strong follow-on sales of MultiCipher products in Asia to International Broadcasting Corp. in F97-F98. Complaint atP 6.
 
 
 [15]
 The alleged representations included that Defendants expected continued gross margin expansion and expected margin expansion over the next two years. Complaint at P 6.
 
 
 [16]
 The alleged representations included that Cal Amp would achieve strong revenue growth in F97 to over $73-$83 million with F97 EPS of $.48-$.66, followed by EPS of $.90 in F98. Complaint at P 6.
 
 
 [17]
 Because we have determined that the complaint fails to plead with particularity sufficient facts to establish that the various representations were false when made, we do not need to consider the heightened pleading requirements under the Private Securities Litigation Reform Act.