**1058**

Priscilla EDWARDS, Plaintiff–
Appellant,

v.

MARIN PARK, INC., a California Corporation; Marin Mobilehome Park; Doris Bertram, individually and as personal representative of George Bertram, deceased; Carole Holley; John Kidd; Connie Kidd, Defendants–Appellees.

No. 02–16820.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2003.

Filed Jan. 26, 2004.

Vincent J. DeMartini, DeMartini & Walker, San Rafael, CA, for the defendants-appellees.

Thomas A. Moore, Law Office of Thomas A. Moore, San Francisco, CA, Jack V. Valinoti, Leland, Parachini, Steinberg, Matzger & Melnick, LLP, San Francisco, CA, for the plaintiff-appellant.

Before: HAWKINS, PAEZ, and BERZON, Circuit Judges.

BERZON, Circuit Judge:

In this appeal we consider whether a plaintiff may be sanctioned for declining the opportunity to amend her complaint. We answer in the negative. We also address the pleading standard for discrimination claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*[1]

## I. BACKGROUND

Since 1992, Priscilla Edwards has lived in a mobile home[2] in the Marin Park

---

1. In a separate memorandum disposition, we resolve Marin Park's cross-appeal of the district court's denial of its motion for attorney fees.

2. Although the California Mobilehome Residency Law of 1978, Cal. Civil Code ch. 2.5, uses "mobilehome" as a single word, we adopt the practice of the California courts, which use "mobile home" except where citing the statute's title or provisions directly. *See, e.g., Robinson v. City of Yucaipa,* 28 Cal. App.4th 1506, 34 Cal.Rptr.2d 291 (1994).

development in Greenbrae, California. *See generally Hacienda Valley Mobile Estates v. City of Morgan Hill,* 353 F.3d 651 (9th Cir.2003) (describing relationship of a mobile home park to a tenant-homeowner). Edwards alleges—accurately, we assume at this stage of the litigation—that the management of the park sent her unjustified, harassing pre-eviction notices in order to drive her from her tenancy. The notices, which the parties call "7 Day Legal Notices," were first sent on January 27 and January 30, 1999. These missives apparently notified Edwards that her home was not in compliance with various provisions of California's Mobilehome Residency Law, Cal. Civil Code ch. 2.5.[3] On February 2 and April 2, 1999, Edwards wrote the Park's management, describing the two notices as "fraudulent, malicious, oppressive, willful and negligent," while apparently failing to explain in what respect either notice was in fact any of those things. Edwards's second letter explained that the Park's notices had caused her to suffer various medical and psychological ailments.

Further notices followed, abating once Edwards sued Marin Park, pro se, in California Superior Court on July 5, 2000. Edwards dropped her complaint in April 2001. As she puts it, the "peace and quiet" she had enjoyed during the pendency of the suit led her to believe no adjudication would be necessary. Harassing inspections and notices from Marin Park allegedly resumed the day the suit was dismissed.

In July 2001, Edwards wrote to the California Department of Housing and Community Development and several California elected officials complaining of un-safe conditions at the park and of management's attempts to enforce minor building standards violations against three female tenants while the more grave safety problems went unrepaired. Days later,[4] Edwards was offered a month-to-month or one-year renewal of her lease, rather than, as she had expected and previously enjoyed, a lease for a longer term.

Edwards sued again, this time in federal court. Her amended, pro se complaint claimed (1) that under the federal Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.,* Marin Park had illegally retaliated against Edwards for her tenant activism; (2) that the "7 Day Legal Notices" amounted to mail fraud actionable under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.;* (3) that Marin Park's reprisals and harassment violated Edwards's rights under the First and Fourteenth Amendments; (4) that the disrepair of the park's roads constituted a common-law nuisance; and (5) that the defendants had intentionally inflicted emotional distress, actionable under state law.

The defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), "failure to state a claim upon which relief can be granted." Edwards then retained counsel and obtained extra time in which to file a response. The district court, in an order filed July 25, 2002, dismissed the FHA retaliation claim without leave to amend because Edwards "failed to allege that she engaged in any 'protected activity'" under the FHA. In so ruling, the district court held that protesting dangerous conditions on residential premises is not, as such, a protected activi-

---

**3.** The notices themselves are absent from the record, and the vague moniker the parties use gives no clue as to their content.

**4.** Edwards's letter to Governor Gray Davis and several state legislators was dated July 18, 2001. Marin Park's lease offer was apparently erroneously dated August 1, 2001, as it was postmarked July 21, 2001.

ty. The RICO claim was dismissed with leave for Edwards to amend so as to plead the alleged fraud with the specificity demanded by Federal Rule of Civil Procedure 9(b).[5] The constitutional claims were dismissed, as none of the defendants is a state actor, but Edwards was given leave to amend with analogous state constitutional claims that might be viable against private parties. The nuisance and emotional distress claims were dismissed with prejudice, the former for failure to comply with a statutory notice requirement, *see* Cal. Civil Code § 798.84, the latter because the conduct as alleged was insufficiently outrageous, as a matter of law, to state a claim.

The court's dismissal of the RICO claim granted leave to amend by August 2, 2002, only one week after the initial dismissal order. "Failure to file an amended pleading by August 2, 2002," the court warned, "will result in the dismissal of this action, with prejudice." On August 2, rather than file an amended complaint or motion seeking more time, Edwards filed an "Election to Stand Upon the Sufficiency of Amended Complaint Pleadings" indicating her desire to "expedite an appeal" to this court. The district court disapproved of Edwards's stance, "counstru[ing] this curious pleading as a deliberate refusal to amend the complaint." Stating that it had considered the five factors set forth in *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir.1992), the court dismissed the complaint with prejudice under Federal Rule of Civil Procedure 41(b)—providing for dismissal "[f]or failure of the plaintiff ... to comply with ... any order of court"—and entered judgment for defendants with prejudice.

Edwards appeals from the dismissal of the FHA and RICO claims. For the reasons given below, we reverse as to the FHA claim but affirm the Rule 12(b)(6)

dismissal of the RICO claim. We briefly address her state-law claims as well.

## II. DISCUSSION

### A. Edwards's FHA Claim

We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir.1995). A motion under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), construing the complaint in the light most favorable to the plaintiff, *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir.2003).

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), instructs us that the standards for pleading discrimination claims are no higher than the relaxed notice pleading standard of Federal Rule of Civil Procedure 8(a), *viz.*, a "short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz* overruled the Second Circuit's practice of imposing, at the dismissal stage, the prima facie case framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Swierkiewicz*, 534 U.S. at 510–11, 122 S.Ct. 992. Rather than adduce a prima facie claim in the complaint itself—before discovery, often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action, has taken place—a plaintiff need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512, 122

---

5. Rule 9(b) provides, in pertinent part: "In all averments of fraud or mistake, the circum- stances constituting fraud or mistake shall be stated with particularity."

S.Ct. 992 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). The prima facie case is "an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992. Failure to adduce it may result in a later loss at summary judgment, but failure to *plead* it does not support dismissal at the outset. *Id.* at 510, 514, 122 S.Ct. 992.

■ While *Swierkiewicz* arose in the context of employment discrimination, its reasoning applies to any claim to which the *McDonnell Douglas* framework is applicable, and courts have readily applied *Swierkiewicz* to FHA claims. *See, e.g., Hamad v. Woodcrest Condo. Ass'n,* 328 F.3d 224, 232–33 (6th Cir.2003); *Nat'l Fair Housing Alliance, Inc. v. Prudential Ins. Co.,* 208 F.Supp.2d 46, 51–52 (D.D.C.2002); *Burrell v. State Farm & Cas. Co.,* 226 F.Supp.2d 427, 434 (S.D.N.Y.2002). Moreover, *Swierkiewicz's* liberal reading of Rule 8(a) applies with equal force to discrimination and retaliation claims, so it must similarly apply to FHA retaliation claims. *See Walker v. Thompson,* 288 F.3d 1005, 1011 (7th Cir.2002) (applying *Swierkiewicz* to prisoner retaliation claim); *Castillo v. Norton,* 219 F.R.D. 155, 160–62 (D.Ariz. 2003) (applying *Swierkiewicz* to employment discrimination and retaliation claims). Edwards's FHA claim thus need only satisfy the Rule 8(a) notice pleading standard reaffirmed in *Swierkiewicz* to survive a Rule 12(b)(6) dismissal.

The most germane paragraphs of Edwards's amended complaint read:

> Defendants . . . retaliated against plaintiff for engaging in protected acts . . . in order to ensure fair housing conditions, *including a disproportionate number of women seemingly targeted by Defendants* . . . who met together to speak *about having noticed the disproportionate figure.*
>
> . . . The purpose of Defendants . . . was to squelch any such speech or association and to have a chilling impact on the

desire of other tenants (including a disproportionate number of women *complaining of feeling targeted as women* ), to speak out . . . in protection of their FHA rights.

(First emphasis in original, other emphasis added). Attached to the complaint was also Edwards's letter to California elected officials, asserting that Marin Park's agent, Inspector Bellavia, was "[un]evenly enforc[ing]" housing code provisions, demanding trivial changes to one woman's mobile home while serious safety problems with the roads and other homes went unaddressed. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (noting that attachments to a complaint are to be considered part of the complaint in deciding a Rule 12(b)(6) motion).

The district court recited the factors of a prima facie FHA retaliation claim, *see Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir.2001), and held that the claim should be dismissed because Edwards failed to allege with adequate specificity her engagement in a protected activity, one prong of the prima facie case. In dismissing the claim premised on the above-quoted paragraphs for failure to state an FHA cause of action, the district court demanded more than fair notice of the claim. *See Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992.

■ Applying instead the proper Rule 8(a) standard, we conclude that Edwards's FHA allegations are sufficient, albeit barely, to survive a motion to dismiss. The FHA protects against discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(b), and renders it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account

of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [§ 3604]," *id.* § 3617. These latter requirements are the "protected activities" that form part of a § 3617 case. *Walker,* 272 F.3d at 1128. Edwards seeks relief only for retaliation, under § 3617, not for discrimination, under § 3604. The district court found Edwards's "vague and conclusory allegations concerning her gender and that defendants' actions had a disproportionate effect on women" "wholly irrelevant" to her retaliation claim. But Edwards has, albeit a bit opaquely, made out a colorable claim that Marin Park sought to intimidate her to stop her from working with other women tenants to secure the enjoyment of their tenancies free from sex discrimination.

On a fair reading, Edwards has put Marin Park on notice that she believes it attempted to "intimidate, threaten, or interfere with" her "on account of [her] having aided or encouraged" women tenants to complain about discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling ... because of ... sex." [6] She alleges that all other tenants in her section of the park were offered long-term leases at the time she was denied one—that is, that Marin Park took action directed specifically towards her, hoping to coerce her into ceasing her activism on behalf of women tenants claiming sex discrimination. Edwards has, therefore, stated a claim under the FHA, not because tenant activism about dangerous conditions as such is protected activity, which the district court took to be the dispositive issue, but because Edwards has adequately stated a claim for retaliation based on activism against sex discrimina-

tion. The complaint adequately sets forth the gravamen of Edwards's § 3617 claim, and that is enough to survive a Rule 12(b)(6) dismissal here.

Dismissal of Edwards's FHA claim under Rule 12(b)(6) was therefore improper.

## B. Edwards's RICO Claim

We are faced with two questions regarding the RICO claim. The first is whether the district court abused its discretion in dismissing it under Rule 41(b) as a sanction for Edwards's failure to follow the court's instruction that she amend the complaint. *See Yourish v. California Amplifier,* 191 F.3d 983, 986 (9th Cir.1999). If so, we review de novo whether the Rule 12(b)(6) dismissal was proper. *See Stone,* 58 F.3d at 436–37.

### 1. The Rule 41(b) Dismissal

Dismissal under Rule 41(b) is a sanction, to be imposed only in "extreme circumstances." *Dahl v. City of Huntington Beach,* 84 F.3d 363, 366 (9th Cir.1996) (quoting *Thompson v. Housing Auth. of Los Angeles,* 782 F.2d 829, 831 (9th Cir. 1986) (per curiam)). The district court was clearly aggravated by Edwards's choice not to amend the RICO claim when given the chance. But Edwards's considered decision to forego amending her complaint was perfectly proper, and was not sanctionable.

■ Under *WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997) (en banc), Edwards was unable to appeal the dismissal of any of her claims for which leave to amend was denied until the district court entered a final judgment dismissing them. *See also Webb v. Ada County,* 285 F.3d 829, 836 (9th Cir.2002)

---

**6.** A plot leased for siting of a mobile home is a "dwelling" under the FHA. 42 U.S.C. § 3602(b).

(explaining the need for a separate document constituting a final judgment before appeal may be taken). She apparently felt that prompt appeal of six of her claims was more important than revising the seventh and attempting to add state constitutional causes of action, and so chose to take her chances that we would find the RICO claim viable as pled. Edwards's choice was all the more understandable in light of the district court's admonition that any amended RICO claim would be scrutinized under Rule 11.

In *WMX Technologies*, we specifically noted that a plaintiff may obtain an appealable final judgment by "fil[ing] in writing a notice of intent not to file an amended complaint." 104 F.3d at 1135 (quoting *Lopez v. City of Needles*, 95 F.3d 20, 22 (9th Cir.1996)). Faced with the district court's initial order dismissing most of her claims and granting leave to amend the RICO claim, Edwards did just what we indicated in *WMX Technologies* she should do: She made a reasonable choice to expedite the rest of the case and test her belief that the RICO claim was adequately pled. Her Election to Stand Upon the Sufficiency of Amended Complaint Pleadings was a proper means to put that choice in the record and did not merit a sanction. On the contrary, the district court should have taken the election not to amend at face value, entered a final judgment dismissing all claims with prejudice, and allowed the case to come to us on appeal in that posture.

The court's order of dismissal, perhaps understandably, read *Yourish* as precluding this course and instead *necessitating* a Rule 41(b) dismissal under the present circumstances. *Yourish*, however, carefully read, does not mandate that a 12(b)(6) dismissal with leave to amend be converted into a Rule 41(b) dismissal-as-sanction when a plaintiff chooses not to amend although given the chance to do so and so informs the court.

The district court in *Yourish* had notified the parties of its tentative ruling to grant a dismissal. The parties agreed the plaintiff could amend within sixty days, and the district court entered a minute order dismissing the initial complaint and granting the sixty days to amend. An amended complaint was never filed. Upon the defendant's motion, filed long after the running of the sixty days, the court entered a Rule 41(b) dismissal for failure to obey the minute order. 191 F.3d at 986.

In *Yourish*, we upheld the Rule 41(b) dismissal, stating that, "[u]nder Ninth Circuit precedent, when a plaintiff fails to amend his complaint after the district court dismisses the complaint with leave to amend, the dismissal is typically considered a dismissal for failing to comply with a court order rather than for failure to prosecute a claim." *Id.* At the same time, we noted that "[t]his approach is somewhat problematic because a plaintiff's failure to amend a complaint is not easily described as disobeying a court order[,] because the plaintiff has the right simply to allow the complaint to be dismissed." *Id.* n. 4.

The precedent on which *Yourish* relied, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir.1992), upheld a district court's Rule 41(b) dismissal after a pro se habeas petitioner failed timely to make an extremely minor amendment to his petition. *Ferdik* analyzed the district court's application of five factors for Rule 41(b) dismissal set forth in our earlier cases and determined that the court did not abuse its discretion in issuing its dismissal. *Id.* at 1260–61.

*WMX Technologies*, an en banc opinion, was filed after *Ferdik* but before *Yourish*. *Yourish*, although expressing discontent with the *Ferdik* approach, failed to cite

*WMX Technologies* or to note the apparent tension between *Ferdik*, read broadly, and *WMX Technologies*. It is our obligation, nonetheless, to reconcile *Yourish* and *WMX*, if possible, so as to avoid an intracircuit conflict necessitating en banc consideration. *See In re Exxon Valdez*, 270 F.3d 1215, 1235–36 & n. 83 (9th Cir. 2001) (describing this court's approach to intracircuit conflicts).

We believe that *Yourish* (and *Ferdik*) can be understood as limited to circumstances in which the plaintiff did *not*, as *WMX Technologies* recommends, give the court "notice of intent not to file an amended complaint," 104 F.3d at 1135, but instead simply failed to take any action. *Yourish* and *Ferdik* both arose when plaintiffs, given the opportunity to amend or be dismissed, did *nothing*. In that situation, resources continue to be consumed by a case sitting idly on the court's docket. The failure of the plaintiff eventually to respond to the court's ultimatum—either by amending the complaint or by indicating to the court that it will not do so—is properly met with the sanction of a Rule 41(b) dismissal. Where, however, the plaintiff makes an affirmative *choice* not to amend, and clearly communicates that choice to the court, there has been no disobedience to a court's order to amend; as *Yourish* itself noted, the plaintiff has the right to stand on the pleading. *Yourish*, 191 F.3d at 986 n. 4. Hence we understand the *Ferdik–Yourish* rule to require a threatened Rule 12(b)(6) dismissal to ferment into a Rule 41(b) dismissal only upon a plaintiff's *inaction*. When the plaintiff timely responds with a formal notice of his intent not to amend, the threatened dismissal merely ripens into a final, appealable judgment. *See WMX Technologies*, 104 F.3d at 1135. And that is just what should have happened here.

The difference between a dismissal under Rule 12(b)(6) and one under Rule 41(b) is not merely formal. For one thing, a Rule 41(b) dismissal is deemed a sanction for disobedience, while a Rule 12(b)(6) dismissal carries no such stigma. But more important is the different posture in which the two sorts of dismissal reach this court. We review a Rule 41(b) dismissal only for abuse of discretion in applying the five factors set forth in *Ferdik*, 963 F.2d at 1260, which pertain to the propriety of the sanction, not to the merits of the underlying question (such as whether a complaint states a claim). *See Yourish*, 191 F.3d at 986. Yet we review a Rule 12(b)(6) dismissal de novo, reviewing directly the question whether the plaintiff has stated a claim upon which relief could be granted. *See Stone*, 58 F.3d at 436–37. An overbroad reading of *Yourish*, demanding conversion of a 12(b)(6) dismissal into one under Rule 41(b) even when the plaintiff has informed the court of her decision not to amend, would not only create an unnecessary conflict with the en banc opinion in *WMX Technologies*. It would also unjustly deny plaintiffs, like Edwards, who exercise their right to stand on a complaint their right to an appeal on the merits of the question whether the complaint is adequate as a matter of law.

The district court therefore erred in converting its original Rule 12(b)(6) dismissal of the RICO claim into a Rule 41(b) sanction.

*2. The Rule 12(b)(6) Dismissal*

We therefore turn to the court's initial dismissal of the RICO claim for failure to state a claim. Like the dismissal of the FHA claim, the district court's initial order dismissing the RICO claim under Rule 12(b)(6) is properly before us by virtue of the final judgment dismissing all claims. *See WMX Technologies*, 104 F.3d at 1136.

■ Rule 9(b)'s requirement that "[i]n all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity" applies to civil RICO fraud claims. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1989). To avoid dismissal for inadequacy under Rule 9(b), Edwards's complaint would need to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* at 1393 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)). While the complaint makes out the time and place Marin Park's purportedly fraudulent "7 Day Legal Notices" were delivered and names the parties involved, it contains not a word of the notices' specific contents. Nor did Edwards attach the notices to her complaint or to any other filing in this case. Edwards's RICO claim therefore fails to satisfy Rule 9(b).

Accordingly, we affirm the dismissal of Edwards's RICO claim for failure to state a claim upon which relief could be granted. No further leave to amend need be granted, since Edwards has already had that chance and declined to exercise it.

## C. Edwards's State Law Claims

At oral argument, the parties addressed Edwards's state-law emotional distress and nuisance claims on the merits. "[W]e ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir.2003) (citing *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir.1998)). Edwards's brief contains no discussion at all of her nuisance claim, and the defendants did not address it in their brief, so we decline to reconsider the viability of that claim on appeal.

■ As to the emotional distress claim, "[i]n assessing whether an issue is sufficiently argued to avoid waiver, we look at whether the opening brief contains the appellant's contentions as well as citations to authorities and the record." *Williams v. Woodford*, 306 F.3d 665, 684 n. 5 (9th Cir.2002) (citing Fed. R.App. P. 28(a)(9)(A)). Though Edward's emotional distress argument is "more than the summary mention of an issue in a footnote, without reasoning in support," *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 4 (9th Cir.1996), her argument, without citation to the standard for evaluating a claim on intentional infliction of emotional distress or an assertion of why the district court erred in evaluating the claim as pled, likely falls short of the waiver standard. *See id.* However, Marin Park addressed the issue in its reply brief, so we cannot say it would suffer prejudice from our addressing it. *See Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir.2003). Hence, we exercise our discretion to consider the district court's Rule 12(b)(6) dismissal of the intentional infliction claim.

■ On de novo review, we readily affirm the district court. Edwards alleges substantial physical and psychological ailments brought on by Marin Park's conduct. The conduct claimed to have inflicted the distress, however, is limited to Marin Park's having conducted building inspections and having sent Edwards several allegedly fraudulent documents and a lease renewal offer that, although shorter than she had wanted, complied with California law. *See* Cal. Civil Code § 768. As the district court properly noted, one necessary element of the California emotional distress tort is "outrageous conduct by the defendant," *Pitman v. City of Oakland*, 197 Cal.App.3d 1037, 1046–47, 243 Cal.Rptr. 306 (1988), *i.e.*, conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community," *Davidson v. City of Westminster*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252, 649

P.2d 894 (1982). Taking all her allegations as true, the conduct Edwards describes simply is not objectively outrageous in the sense required for it to sound in intentional infliction of emotional distress. Hence we affirm the district court's dismissal of the emotional distress claim.[7]

## III. CONCLUSION

Edwards has met the pleading standard for her FHA claim but not for her RICO claim. We reverse the dismissal of the former, affirm the dismissal of the latter under Rule 12(b)(6) rather than Rule 41(b), affirm dismissal of the emotional distress claim, and remand for further proceedings. All parties shall bear their own costs on appeal.

**REVERSED in part, AFFIRMED in part, and REMANDED.**

---

7. Edwards also claims that the district court erred in dismissing her state-law claims *with prejudice* when the initial district court order "clearly stated that plaintiff's failure to amend would result in a dismissal *without* prejudice to her state claims." Edwards appears to have misunderstood the district court.

The first dismissal order noted, in a footnote, that were Edwards to fail to amend her RICO claim, there would be no surviving federal claims, and the case would have to be dismissed for lack of subject-matter jurisdiction under 28 U.S.C. § 1367(c)(3). The court then said that "any *remaining* state law causes of action will be subject to dismissal without prejudice to bringing said claims in state court" (emphasis added). In that very same order, the court unambiguously dismissed, without leave to amend, all the state-law claims in Edwards's then-extant amended complaint, though it granted leave to add state constitutional claims. In context, the court was only accurately stating the effect of § 1367 by explaining that the dismissal of the action for lack of federal subject matter would be without prejudice to any *other*, "remaining" state-law causes of action which Edwards might later add, such as the state constitutional claims.