**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHANG HUA HE; XIN QIN HE,
                *Petitioners,*

v.

ALBERTO R. GONZALES, Attorney
General,
                *Respondent.*

No. 05-74930

Agency Nos.
A70-700-920
A75-010-197

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 6, 2007—Honolulu, Hawaii

Filed September 4, 2007

Before: David R. Thompson, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

**COUNSEL**

Jisheng Li, Honolulu, Hawaii, for the petitioners.

Margaret K. Taylor, Washington, District of Columbia, for the respondent.

**OPINION**

TALLMAN, Circuit Judge:

Chang Hua He and Xin Qin He ("Mr. He" and "Mrs. He," respectively) petition for review of a Board of Immigration Appeals ("BIA") denial of their second motion to reopen their immigration proceedings. The BIA concluded that the Hes' motion did not fall within any exception to the regulatory bar against motions to reopen that are untimely or successive. Because the birth of two of the Hes' children in the United

States cannot establish changed circumstances in the petition-
ers' country of origin, here the People's Republic of China
("PRC" or "China"), within the meaning of 8 C.F.R.
§ 1003.2(c)(3)(ii), we deny the petition for review.[1]

I

Mr. and Mrs. He, natives and citizens of China, were mar-
ried in the Fujian province on January 6, 1992. At the time,
Mrs. He was several months pregnant with the couple's first
child. Shortly after the Hes celebrated their marriage, a PRC
family planning official spoke with Mr. He's father regarding
the need for birth control for Mrs. He.[2] However, despite the
official's demand, Mrs. He did not have an intrauterine device
inserted. Within a week of their marriage, Mrs. He left the
Hes' village, Jiang Jing, and stayed with a friend until she
returned to give birth to a baby girl on June 6, 1992. After the
birth of their first child, family planning officials asked the
Hes to undergo sterilization, though neither was actually ster-
ilized.

Nevertheless, fearing a forced vasectomy, Mr. He left the
PRC on June 10, 1992, and eventually made it to the United
States on or about June 30, 1992. Despite filing applications
for asylum and withholding of removal, there appear to have
been no administrative proceedings initiated by or against Mr.
He until he was served with a Notice to Appear, on April 29,
1997, charging him as a deportable alien.

For her part, Mrs. He remained in the PRC—residing in a
different village—for an additional six years after the birth of
her daughter.[3] On or about September 24, 1998, Mrs. He

---

[1]The denial of a motion to reopen is a final administrative decision sub-
ject to judicial review in the court of appeals. *See Singh v. Ashcroft*, 367
F.3d 1182, 1185 (9th Cir. 2004).

[2]The official did not know that Mrs. He was already pregnant.

[3]During this time, the Hes' daughter purportedly lived with Mr. He's
parents. Mr. He's father also paid an assessment to family planning offi-
cials for the birth of the Hes' first child.

applied for admission to the United States in Guam. She supported her application with a counterfeit United Kingdom passport number and another individual's valid nonimmigration visa. After providing information to immigration authorities about the individuals from whom Mrs. He received the fraudulent documents, Mrs. He was released. Eventually, however, she was served with a Notice to Appear on March 4, 1999.

An immigration judge then consolidated the Hes' separate requests for asylum and withholding of removal and designated Mr. He as the principal asylum applicant. The merits of the Hes' immigration proceedings were given priority because Mrs. He was pregnant with her second child. The immigration judge found that the Hes had not established a well-founded fear of future persecution and denied the Hes' applications for asylum and withholding of removal.[4] The BIA dismissed the Hes' separate appeals in a consolidated decision on August 23, 2001, and we denied their petition for review on May 29, 2002.

While their initial petition for review was pending on appeal to our court, the Hes filed their first motion to reopen with the BIA on January 16, 2002, seeking protection from removal pursuant to the Convention Against Torture. The BIA denied the motion as untimely on February 13, 2002. On June 30, 2005, the Hes filed a second motion to reopen with the BIA, alleging that they would be subject to forced sterilization if returned to the PRC following the birth of their second U.S.-born child in December 2004. The BIA denied the motion as time and number barred, and the Hes filed another timely petition for review challenging this last denial.

---

[4]The IJ granted Mr. He relief in the form of voluntary departure.

II

A

We review for abuse of discretion the BIA's denial of a motion to reopen. *See Azanor v. Ashcroft*, 364 F.3d 1013, 1018 (9th Cir. 2004). The decision of the BIA should be left undisturbed unless it is "arbitrary, irrational, or contrary to law." *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002) (internal quotation marks omitted).

B

Typically, petitioners are limited to filing one motion to reopen within ninety days of the date of a final order of removal. *See* 8 C.F.R. § 1003.2(c)(2). The Hes do not dispute that they filed an untimely and successive motion to reopen; instead, they argue that their motion should be considered pursuant to one of the exceptions to the time and number restrictions. Specifically, the Hes point to 8 C.F.R. § 1003.2(c)(3)(ii), which states that "[t]he time and numerical limitations . . . shall not apply to a motion to reopen proceedings . . . based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."

[1] The Hes claim that the birth of their second child in the United States (their third in total) will render them subject to forced sterilization pursuant to the PRC's population control policy if they are returned to China. We have never addressed the specific question raised in this appeal: namely, can an alien establish changed circumstances sufficient to satisfy the exception to the time and number bars applicable to a motion to reopen based on the birth of children in the United States and the resulting threat of forced sterilization if returned to the country of origin? The Second and Seventh Circuits, however,

have addressed this question in published opinions, and each circuit has answered in the negative.[5]

In *Zheng v. U.S. DOJ*, 416 F.3d 129, 130-31 (2d Cir. 2005) (per curiam), the Second Circuit held that the petitioner could not establish changed circumstances in China on account of his pregnant wife's illegal arrival in the United States: "Zheng, who claims persecution based on China's population control policy, alleged before the BIA no changed circumstances *in China*; rather he claimed that his personal circumstances *in the United States* had changed." *Id.*; *see also Guan v. BIA*, 345 F.3d 47, 49 (2d Cir. 2003) (per curiam) (rejecting petitioner's argument that the birth of her two sons in the United States satisfied the changed circumstances exception under 8 C.F.R. § 1003.2(c)(3)(ii)). In *Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005), the Seventh Circuit followed suit, stating that "the birth of [petitioner]'s children is merely a change in 'personal circumstances' in th[e] [United States]." *Id.*

More recently, the Second Circuit in *Wang v. BIA*, 437 F.3d 270 (2d Cir. 2006), articulated a persuasive policy reason against permitting an alien to undermine the effect of the BIA's final order of removal by altering his personal circumstances in a way that might adversely affect his rights in his home country:

> It is quite a different situation, however, where a petitioner is seeking to reopen his asylum case due

---

[5]In an unpublished decision, the Eleventh Circuit also concluded that petitioners in the Hes' position cannot establish changed circumstances in China. *See Xiao v. U.S. Attorney Gen.*, No. 06-14431, 219 F. App'x 862, 865 (11th Cir. Feb. 28, 2007) (unpublished opinion). Similarly, the Sixth Circuit held recently that a petitioner could not establish changed circumstances in Guinea by virtue of her daughter's birth in the United States and the threat that she might be subject to forced circumcision if removed to that country. *See Bah v. Gonzales*, No. 06-3704, 2007 WL 1338540, at *3-4 (6th Cir. May 8, 2007) (unpublished opinion).

to circumstances entirely of his own making after being ordered to leave the United States. In such a situation, it would be ironic, indeed, if petitioners like Wang, who have remained in the United States illegally following an order of deportation, were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities. This apparent gaming of the system . . . is not tolerated by the existing regulatory scheme.

*Id.* at 274; *see also INS v. Doherty*, 502 U.S. 314, 323 (1992) (emphasizing that motions to reopen are "disfavored" and that "[t]his is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States"). In sum, no court has held that, in the absence of other supporting documentation, a petitioner can establish changed circumstances under 8 C.F.R. § 1003.2(c)(3)(ii) in the country of origin by virtue of the birth of children in the United States.[6]

[2] We join our sister circuits and hold that the birth of children outside the country of origin is a change in personal circumstances that is not sufficient to establish changed circumstances in the country of origin within the regulatory

---

[6]In *Guo v. Ashcroft*, 386 F.3d 556, 566 (3d Cir. 2004), the Third Circuit held that petitioner's supporting affidavit describing instances of forced sterilization, in conjunction with the BIA's failure to apply the correct legal standard, established a prima facie showing of petitioner's well-founded fear that she would be persecuted as a result of giving birth outside China. However, *Guo* is distinguishable because Guo filed her motion to reopen within the ninety-day deadline. *Id.* at 560. As a result, neither the BIA nor the Third Circuit considered whether the birth of Guo's children established changed circumstances in China for purposes of the late-filing exception. *See* 8 C.F.R. § 1003.2(c)(3)(ii). Following the Third Circuit's decision, the BIA issued a published decision distinguishing *Guo* holding that the affidavit submitted in *Guo* was insufficient to establish a prima facie case. *See In re C-C-*, 23 I. & N. Dec. 899, 901-04 (BIA 2006).

exception to late-filed or successive motions to reopen under
8 C.F.R. § 1003.2(c)(3)(ii). Two of the Hes' three[7] children
were conceived in the United States, with the last child being
born over three years after the BIA's removal order became
final in August 2001. Both extra-circuit case law and a
straightforward reading of the regulation's text suggest that
child birth alone is insufficient. As the Second Circuit has
held, "[a] self-induced change in personal circumstances can-
not suffice." *Wang*, 437 F.3d at 274. Thus, absent additional
evidence of changed circumstances in China following the
BIA's issuance of the Hes' final order of removal, we must
deny the petition for review. *Cf. Chen v. Gonzales*, No. 06-
1010, 2007 WL 1718552, at *4 (2d Cir. June 14, 2007) (leav-
ing open the possibility that "a petitioner whose changed *per-
sonal* conditions (which result in his falling into a category of
individuals threatened by changed *country* conditions) [might
be able to] rely on those changed country conditions in an
untimely motion to reopen where the underlying change in
personal circumstances postdated his order to depart").

The Hes have provided insufficient supporting documenta-
tion to establish changed conditions in China for reasons other
than the change in their personal circumstances following the
births of their children in the United States. Submitted with
the second motion to reopen were two documents, neither of
which is persuasive. The first document is a sworn statement
from Mrs. He in which she stated that one of her friends
"gave birth to three children in Holland, [and was] forced to
be sterilized soon after her repatriation to . . . [the] Fujian
Province." Mrs. He's statement provides no dates, and with-
out any additional context, it is insufficient to establish

---

[7]The original immigration judge doubted whether the Hes actually had
a child born in China in 1992. Despite the Hes' testimony concerning their
daughter's birth and a fine allegedly paid by Mr. He's father, the record
contains scant evidence of the child's existence. The child's purported
birth certificate does not have the newborn's footprint or birth weight, and
the Hes have never provided a picture of the child, despite the IJ's explicit
request for a photo.

changed circumstances in the PRC after the ninety-day filing deadline elapsed in 2001.

The second document submitted with the Hes' second motion to reopen is an unauthenticated translation of a Chinese document titled "Must Knows About Marriage and Birth." The translation, allegedly promulgated by the "Birth Control Commission of Fuqing City" in the Fujian province, states that "a sterilization procedure must be performed within 2 months after the birth of the second child." The Hes contend that because Mrs. He now has at least two children, she will be subject to immediate sterilization. Once again, however, it is unclear how this document establishes a *change* in conditions in China, especially in light of the fact that it is dated February 1, 2001—six months prior to the BIA's denial of the Hes' direct appeal. Thus, the Hes have provided insufficient support to establish changed circumstances for reasons other than the births of their two U.S.-born children.[8]

### III

**[3]** We hold that the birth of a child outside the country of nationality is insufficient, on its own, to establish changed circumstances within the meaning of 8 C.F.R. § 1003.2(c)(3)(ii). Because the Hes have provided insufficient independent support to excuse their second and untimely motion to reopen,

---

[8]This case is therefore distinguishable from the Second Circuit's recent decision in *Shuo Yung Guo v. Gonzales*, 463 F.3d 109 (2d Cir. 2006), in which the court held that the BIA abused its discretion when it denied petitioner's second motion to reopen without examining persuasive record evidence that (1) post-dated the final order of removal and (2) described heightened enforcement of China's family planning policy against citizens returning with foreign-born children to Changle City in Fujian province. *Id.* at 114-15. Notably, the petitioner in *Shuo Yung Guo* gave birth to a child in the United States *before* entry of the final order of removal and did not argue that birth alone established changed circumstances. *Id.* at 111. In addition, the documentation that the court found persuasive as to changed circumstances in *Shuo Yung Guo* is not present in the record in this case.

the BIA did not abuse its discretion when it denied the motion.[9] Accordingly, the petition for review is

**DENIED.**

---

[9]Although the Hes are barred in the motion to reopen context, they may file a new asylum application pursuant to 8 U.S.C. § 1158(a)(2)(C), which allows for the filing of multiple or untimely asylum applications if an alien can establish changed or extraordinary circumstances under § 1158(a)(2)(D). The relevant regulation makes clear that the term "changed circumstances" for purposes of filing an asylum application—as opposed to a motion to reopen—includes a change in personal circumstances occurring outside the country of nationality. *See* 8 C.F.R. § 208.4(a)(4)(i)(B) (referring to "changes in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including . . . activities the applicant becomes involved in *outside* the country of feared persecution that place the applicant at risk" (emphasis added)); *see also Xiao Xing Ni v. Gonzales*, No. 04-0042, 2007 WL 2012395, at *11 (2d Cir. July 12, 2007) (Calabresi, J., concurring). An applicant also must establish that he filed his untimely or successive asylum application "within a reasonable period given those 'changed circumstances.' " *Id.* § 208.4(a)(4)(ii). However, because this issue is not properly before us, we offer no opinion as to the Hes' (or similarly situated aliens') likelihood of success under the broader asylum standard.