**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FENG GUI LIN, AKA Fenggui Lin,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,

                    *Respondent.*

No. 08-71227

Agency No.
A076-280-320

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 5, 2009—Las Vegas, Nevada

Filed December 3, 2009

Before: Ronald M. Gould and Johnnie B. Rawlinson,
Circuit Judges, and Ralph R. Beistline,* District Judge.

Opinion by Judge Rawlinson

---

*The Honorable Ralph R. Beistline, United States District Judge for the
District of Alaska, sitting by designation.

15841

---

**COUNSEL**

Gary J. Yerman, New York, New York, on behalf of petitioner Feng Gui Lin.

Michael C. Heyse, Washington, DC, on behalf of respondent Eric H. Holder Jr.

---

**OPINION**

RAWLINSON, Circuit Judge:

This case requires us to address a series of motions to reopen seeking to file successive asylum petitions on the theory that China's family planning policies have become more stringent since the time of the original removal proceedings. Feng Gui Lin (Lin), the petitioner in this case, specifically asserts that because she now has children, she fears that she will be forcibly sterilized if returned to China. We are unpersuaded that the sterilization policies in China have changed to the degree that relief is warranted. We deny Lin's petition.

## I. BACKGROUND

Lin is a native and citizen of China. She was served with a Notice to Appear in April, 1999. Lin filed an application for asylum, asserting that she was persecuted in China because of her involvement with her boyfriend who was in the army. In March, 2000, the immigration judge (IJ) denied Lin's applications for relief and ordered her removed to China. The BIA summarily affirmed the IJ's decision.

Lin did not return to China. Rather, in 2005, Lin married Xing Xiong Dong, a legal permanent resident (LPR) of Chinese descent. In 2007, Lin submitted a motion to reopen to the BIA based on changed country conditions. Lin argued that circumstances in China had changed since her 2000 hearing, specifically that forcible sterilizations had been mandated by government officials in the Fujian province, her birthplace, for Chinese citizens who had more than one child abroad. Lin's affidavit in support of her motion to reopen indicated that she gave birth to a girl in 2006, a boy in 2007, and was expecting her third child to be born in May, 2008.

Lin also submitted an affidavit from her mother attesting to the forced sterilization of Lin's sister and sister-in-law. In addition, she included a letter from the Lianxing village in the Fujian province, informing Lin that people who have two children must undergo sterilization procedures after their second child's birth, and that because Lin was neither a citizen of the United States nor a permanent resident, she would be treated as a Chinese citizen subject to the family planning laws. The letter indicated that upon her return and the registration of her children, she "must undergo the required family planning procedures as all other local people did . . . "

Other documents in evidence were: an issuance addressing Zheng Yu He, a specific Chinese individual, who ostensibly violated the family planning laws while overseas; a 2003 administrative opinion from Changle City Family-Planning Administration regarding Zheng Yu He's violation of the family planning laws; a 2003 administrative decision from the Fujian Province family planning administration department regarding Zheng Yu He's violation; a chart of the fees assessed against Chinese parents based on different violations of the family planning laws; a July, 1999, question and answer session from Chang Le City referencing the sterilization requirement after the birth of a second child; a 2007 notice from Changquing village in Chang Le City requiring sterilization after the second child; a document describing

monetary incentives for those who undergo sterilization dated 2007; the 2006 United States State Department Report on China's Human Rights Practices; an affidavit and other documents relating to an individual named Chen, Jin Fu from Changle who was subjected to forced sterilization upon returning from abroad; various news articles; and other supporting documents.

The Board of Immigration Appeals (BIA) denied Lin's motion to reopen, concluding that the submitted evidence did not establish a material change in country conditions, such that Lin now had an objective well-founded fear of persecution or faced a clear probability of persecution. Lin filed a timely petition for review.

## II.  STANDARD OF REVIEW

**[1]** Although we have jurisdiction under 8 U.S.C. § 1252(a) to review the denial of a motion to reopen, we start from the premise that "[m]otions to reopen are discretionary and disfavored." *Valeriano v. Gonzales*, 474 F.3d 669, 672 (9th Cir. 2007) (footnote reference and internal quotation marks omitted). "We review for abuse of discretion the BIA's denial of a motion to reopen." *He v. Gonzales*, 501 F.3d 1128, 1130-31 (9th Cir. 2007) (citation omitted). "The decision of the BIA should be left undisturbed unless it is arbitrary, irrational, or contrary to law." *Id*. at 1131 (citation and internal quotation marks omitted).

At oral argument, government counsel contended that the BIA's decisions in *Matter of J-H-S-*, 24 I&N Dec. 196 (BIA 2007), *Matter of J-W-S-*, 24 I&N Dec. 185 (BIA 2007), and *Matter of S-Y-G-*, 24 I&N Dec. 247 (BIA 2007), should be afforded deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) as "an interpretation of what it means to be a refugee." Counsel specifically expressed that *Chevron* deference should be extended to the BIA's "case-by-case" formulation of a policy

position on changed country conditions vis à vis enforcement of China's family planning policies. In *Matter of J-H-S-*, the BIA concluded that "an alien who has established that he or she has had two children in China may qualify as a refugee if the evidence presented establishes, on a case-by-case basis, that the births violated family planning policies in that alien's local province, municipality, or other locally-defined area, and that current local family planning enforcement efforts would give rise to a well-founded fear of persecution because of the violation." 24 I&N Dec. at 197-98. Applying this framework to the petitioner in that case, the BIA found that the record did "not clearly show that the birth of petitioner's second child would be viewed as a violation of family planning policies in Fujian Province," and that even if it would, the record lacked persuasive evidence that the birth would trigger enforcement activity rising to the level of persecution. *Id.* at 202 (footnote reference omitted). Specifically, the BIA noted that although the 2006 Country Report documented reports of forced sterilization in that province, the 2007 Report indicated that State Department interviews with visa applicants from the Fujian Province yielded no evidence of forced abortions and that countrywide enforcement was uneven. *Id.* at 202-03. Noting that physical coercion continues to be officially condemned, the BIA concluded that petitioner "ha[d] not carried his burden of showing that he [had] a well-founded fear of persecution in China on account of fathering two children." *Id.* at 203.

In *Matter of J-W-S-*, the BIA considered whether the petitioner, who had two United States citizen children, could qualify for asylum. Specifically, the issue was whether Petitioner had established that he would be subjected to forced sterilization upon his return to China. *See* 24 I&N Dec. at 189. The BIA observed that the most recent country reports indicated that children born overseas are not counted for birth planning purposes when the parents return to China. *See id.* at 190. It further noted that the 2005 Country Report did not contain any instances of returnees from the United States

being forced to undergo sterilization procedures on their return. *See id.* at 191. The BIA expressly referenced a response from Chinese officials in the Fujian Province "that children born abroad, if not registered as permanent residents of China . . . are *not* counted against the number of children allowed under China's family planning laws." *Id.* at 193 (emphasis added).

In *Matter of S-Y-G-*, the BIA again applied the "case-by-case" framework established in *J-H-S-*. *See* 24 I&N Dec. at 251. In doing so, the BIA noted that the petitioner failed to address evidence in the record that children born abroad were not counted for the purpose of enforcing China's family planning policies. *See id.* at 255. The government urges us to glean from these three cases a definition of "refugee" that would bar relief for Lin.

**[2]** "Generally, we accord Chevron deference where there is binding agency precedent on-point (either in the form of a regulation or a published BIA case)." *Park v. Holder*, 572 F.3d 619, 623-24 (9th Cir. 2009) (holding BIA regulation defining domicile was reasonable interpretation of statute at issue where statute was silent regarding the meaning of domicile) (citation and alteration omitted); *see also Fregozo v. Holder*, 576 F.3d 1030, 1034-35 (9th Cir. 2009) (recognizing that *Chevron* deference is applicable to the BIA's construction of statutory terms in the Immigration and Nationality Act). Here, the government appears to argue that the BIA's "case-by-case" approach deserves *Chevron* deference. At least one other circuit has determined that the BIA's construction of 8 U.S.C. § 1101(a)(42)'s definition of refugee, favoring "case-by-case review" in lieu of a "categorical application of the well-founded fear provision to such claims," merits *Chevron* deference. *See Xiao Kui Lin v. Mukasey*, 553 F.3d 217, 224 n.6 (2d Cir. 2009). Because the issue of *Chevron* deference was not briefed by the parties or fleshed out during oral argument, we elect not to resolve the *Chevron* issue in this opinion. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066

(9th Cir. 2004) (declining to address issue raised by party at oral argument but not mentioned in either party's brief). Deference aside, we agree with the BIA that case-by-case consideration is appropriate. We have consistently adhered to individualized analysis when determining whether changed country conditions warrant withholding of removal. *See, e.g., Maharaj v. Gonzales*, 450 F.3d 961, 978 (9th Cir. 2006) (remanding where BIA failed to make an individualized determination as to the effect of changed country conditions). We see no principled basis to depart from this precept when determining whether changed country conditions warrant reopening of a Petitioner's asylum case.

## III.  DISCUSSION

### A.  Motion to Reopen Requirements

An alien must file a motion to reopen within ninety days of the date of entry of a final order of removal. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); *see also* 8 C.F.R. § 1003.2(c)(2). However, "[t]here is no time limit on the filing of a motion to reopen" for asylum applications "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." *Id.* § 1229a(c)(7)(C)(ii); *see also Chen v. Mukasey*, 524 F.3d 1028, 1030 (9th Cir. 2008); 8 C.F.R. § 1003.2(c)(3)(ii).

Lin argues that the BIA incorrectly determined that her motion to reopen did not meet the changed country conditions exception. Lin asserts that she submitted evidence demonstrating that due to changed country conditions in China she faces sterilization if returned to that country.

We have previously concluded that "the birth of children outside the country of origin is a change in personal circumstances that is not sufficient to establish changed circumstances in the country of origin within the regulatory exception to late-filed or successive motions to reopen under

8 C.F.R. § 1003.2(c)(3)(ii)." *He*, 501 F.3d at 1132. Lin, however, asserts that her motion was predicated not on the change in her personal circumstances, but on evidence that "the implementation and enforcement of the family planning policy in [Lin's] home village and province, subsequent to her prior hearing" has become more stringent. Lin argues that because the Fujian province enforces the family planning policy through forced sterilization, she has a well-founded fear that given the number of children she has, she will be forcibly sterilized upon her return to China. That well-founded fear would, in turn, qualify her for asylum as a refugee. *See* 8 U.S.C. § 1101(a)(42).

**[3]** To prevail on her motion to reopen, Lin "needed to clear four hurdles: (1) [s]he had to produce evidence that conditions had changed in [China]; (2) the evidence had to be material; (3) the evidence must not have been available and would not have been discovered or presented at the previous proceeding; and (4) [s]he had to demonstrate that the new evidence, when considered together with the evidence presented at the original hearing, would establish prima facie eligibility for the relief sought." *Toufighi v. Mukasey*, 538 F.3d 988, 996 (9th Cir. 2008), *as amended* (citations and internal quotation marks omitted). Failure to meet any one of these burdens would support the BIA's denial of Lin's motion to reopen. *See id.*

The BIA determined that the evidence proffered by Lin did not establish that conditions in China had "changed materially since [Lin's] last hearing such that [she] would now have an objective well-founded fear of persecution, or face a clear probability of persecution, upon her return to China." Upon review, we conclude that the BIA acted within its discretion in reaching this determination.

**[4]** In making its ruling, the BIA thoroughly considered and addressed the evidence presented by Lin. In discussing the statement from Lin's mother describing forced sterilization of

Lin's sister and sister-in-law, the BIA mentioned that the mother's description was cursory, and did not contain sufficient detail to warrant a conclusion that the sterilizations met the regulatory definition of a forced sterilization. Moreover, the BIA observed that there was no indication in the statement that Lin's sister and sister-in-law were similarly situated to Lin, and that Lin did not mention her sister's forced sterilization in her own affidavit.

**[5]** The BIA also evaluated the letter from the village regarding family planning laws, noting that the letter does not reflect that the law has changed or enforcement of the law has changed. More importantly, the BIA recognized that the letter failed to address the fact that Lin's husband had permanent resident status in the United States and how that status would affect application of the family planning laws. The BIA relied on the precedential cases of *Matter of J-H-S-*, *Matter of J-W-S-*, and *Matter of S-Y-G-*, finding that the documents submitted by Lin were "the same or similar" to the documents in the three precedential cases that were likewise found inadequate to establish changed country conditions in China.

**[6]** The BIA's detailed analysis of the documentation submitted by Lin distinguishes this case from *Shou Yung Guo v. Gonzales*, 463 F.3d 109 (2d Cir. 2006), a case relied upon by Lin. In *Guo*, the Second Circuit granted the petition for review primarily because the BIA, in deciding the motion to reopen in that case, apparently never "really paid any attention to the documents" submitted by the Petitioners. *Id.* at 115. Because the BIA "paid attention" to the documents submitted by Lin and explained why those documents did not meet Lin's burden to establish changed country conditions, this significant distinction between the two cases persuades us that *Guo* should not influence the outcome of this case.

Decisions from other circuit courts on which Lin relies are also distinguishable. *Xiu Zhen Lin v. Mukasey*, 532 F.3d 596, 597 (7th Cir. 2008), involved a village committee letter spe-

cifically stating "that the village 'strictly enforces The Population and Family Planning Ordinance in Fujian Province,' that 'all citizens with two children will be designated as a target for sterilization,' and 'although you currently reside in the United States, you are still a citizen of the People's Republic of China. It is known that you have had three children. *You certainly will be subjected to sterilization procedures . . .* ' " (emphasis added). The Seventh Circuit's decision also reflects its dismay occasioned by the BIA's statement that despite the petitioner's letter (the authenticity of which was not in question in that case), the petitioner had failed to provide evidence " 'that the policy is implemented through physical force or other means that would amount to persecution.' " *Id.* at 597.

Lin's citation to *Zheng v. Attorney General*, 549 F.3d 260, 263 (3d Cir. 2008), is similarly unpersuasive. Zheng submitted a village letter indicating that " 'although you are currently residing in the United States, you are still a citizen of the People's Republic of China who had three children, and therefore you will definitely be targeted to [sic] sterilization.' " *Id.* (citation and alteration omitted). The Third Circuit was influenced by the BIA's failure to address much of the evidence, including petitioner-specific evidence, such as Zheng's affidavit and letter to him from Changle City. *See id.* at 268-69. In doing so, however, the court recognized that the BIA need not parse every piece of evidence, and implicitly recognized that citation to BIA precedent discussing such evidence may be sufficient. *See id.* at 268-69.

**[7]** In this case, the BIA admittedly did not specifically address some of the evidence submitted by Lin, including the 2006 Country Report. Nevertheless, the BIA explicitly considered much of the evidence Lin provided, especially the evidence that was specific to her. As the Third Circuit noted, although the BIA must consider a petitioner's evidence of changed country conditions, it need not expressly refute on the record every single piece of evidence. *See id.; see also Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) (noting that

this is particularly the case for evidence that the BIA is asked to consider "time and again") (citation omitted).

The importance of individualized consideration of these matters is reinforced by the Third Circuit's recent precedent distinguishing *Zheng*. *See Liu v. Attorney General of the United States*, 555 F.3d 145 (3d Cir. 2009). In *Liu*, the Third Circuit attributed its holding in *Zheng* to the fact that "the BIA did not consider adequately the materials that the petitioners had submitted with their applications to reopen . . . " *Id.* at 149. The Third Circuit rejected Liu's argument that the 2006 Country Report established changed country conditions. Rather, according to the Third Circuit, the 2006 Report documented that the Chinese government "continue[d] its population control policy . . . " *Id.* The Third Circuit also credited the BIA's conclusion in *Matter of J-W-S-* that the "Chinese government does not have a national policy requiring forced sterilization of a parent who returns with a second child born outside of China." *Id.* at 149-50.

**[8]** We agree with the Third Circuit that the BIA's precedential decision, *Matter of J-W-S-*, forecloses Lin's argument that her United States citizen children will trigger the enforcement of coercive population control measures against her should she return to China. For that reason, we are singularly unpersuaded by Lin's reliance on *Li v. United States Attorney General*, 488 F.3d 1371, 1376 (11th Cir. 2007) and its progeny, *Jiang v. United States Attorney General*, 568 F.3d 1252, 1258 (11th Cir. 2009).

We also note that in contrast to the cases relied on by Lin, the BIA explicitly addressed the village letter submitted by Lin. That letter stated that Lin would be subject to China's family planning laws because she was neither a United States citizen nor a legal permanent resident. Thus, the letter to Lin supports a conclusion that legal permanent resident status in the United States has a bearing on China's family planning policy implementation. Yet, as the BIA noted, the letter to Lin

does not mention Lin's husband's status as a legal permanent resident, or give any indication how his status would affect application of the family planning policies to Lin.

There is substantial uniformity among the circuits on this issue. Indeed, considering evidence similar to that submitted by Lin, several circuits have denied relief. *See, e.g., Zheng v. Mukasey*, 546 F.3d 70, 72-73 (1st Cir. 2008) (denying petition based on evidence similar to Lin's, including the 2006 Country Report); *Shao v. Mukasey*, 546 F.3d 138, 159 (2d Cir. 2008) (same); *Huang v. Mukasey*, 523 F.3d 640, 643, 655 (6th Cir. 2008) (denying petition, crediting BIA's finding "that children born abroad are not counted for birth planning purposes when the parents return to China"), *citing S-Y-G-*, 24 I&N Dec. at 255 (alteration, parallel citation and internal quotation marks omitted); *Lin v. Gonzales*, 435 F.3d 708, 711 (7th Cir. 2006) (denying petition predicated on the much-cited Aird affidavit); *Zheng v. Mukasey*, 523 F.3d 893, 896 (8th Cir. 2008) (concluding that there was a lack of "evidence of *changed* circumstances") (emphasis in the original); *Wei v. Mukasey*, 545 F.3d 1248, 1254-55 (10th Cir. 2008) (same).

**[9]** On the record before us, the BIA's determination that the documents submitted by Lin failed to establish a change in the family planning laws or enforcement of those laws was not "arbitrary, irrational, or contrary to law." *He*, 501 F.3d at 1131. Documents submitted by Lin that predate her March, 2000, removal hearing are consistent with documents dated after her removal hearing. For example, the series of questions and answers regarding Chang Le City's family planning policies indicated that sterilization is expected after the second child. The "Notice" dated January 23, 2007, from Chang Le City's Changquing Village Committee similarly indicated that Chinese citizens with two children shall undergo sterilization. The 2007 notice in no way reflected a change in the law or any intent to enforce this provision more strictly. Thus, it cannot be fairly argued that these documents established a *change* in country conditions. *See id.* at 1133 (concluding that

documentary evidence was insufficient to establish changed country conditions where no showing of a change in policy was evident). As government counsel pointed out during oral argument, both the 1998 and 2006 Country Reports reflect that forced abortion and sterilization are generally prohibited, but in the Fujian province such practices have been known to occur. Therefore, the 2006 report does not document a change in country conditions from the time of Lin's original hearing.

Tellingly, during oral argument, Lin's counsel conceded that he knew of no evidence in existence that an individual similarly situated to Lin—that is, a returnee whose spouse has LPR status and whose children are United States citizens— was subjected to forced sterilization upon returning to China. Rather, counsel relied on a 2003 Fujian Province Administrative Decision providing, "if either parent remains a Chinese national and citizen without permanent residence overseas any child of such a couple shall be treated as a Chinese national and citizen for domestic administrative purposes regardless of the child's nationality conferred by his or her country of birth." However, the specific circumstances discussed were that the Chinese government employee and his spouse had a second child on a "family visit" to the United States. The circumstance addressed in the directive was so dissimilar to Lin's circumstance that the BIA was not compelled to credit the directive as conclusive evidence. More importantly, the directive merely stated that the "violation is . . . subject to sanctions and penalties," without explication. There was no indication whatsoever that the "sanctions and penalties" would include sterilization, forced or otherwise.

[10] In sum, the BIA's determination that the evidence Lin submitted did not establish a material change in China's country conditions was not "arbitrary, irrational, or contrary to law." *Id.* at 1131. Accordingly, we conclude that the BIA acted within its discretion when it denied Lin's motion to reopen.

### B. Availability of a Successive Asylum Application

**[11]** Lin submits that independent of her motion to reopen, under 8 U.S.C. § 1158(a)(2)(D), she is entitled to file a free-standing successive asylum application.[1] This argument is foreclosed by our prior precedent. *See Chen*, 524 F.3d at 1032. In *Chen,* we determined that "[i]t was reasonable for the BIA to conclude that to permit such an avoidance of the time and number limits on motions to reopen [by allowing a free-standing claim for asylum under § 1158(a)(2)(D)] would make nonsense of the more restrictive exception in § 1229a(c)(7)." *Id.* The only avenue available for Lin to file her successive asylum application is through a successful motion to reopen. Because Lin's motion to reopen was properly denied, she cannot file a successive asylum application. *See id.*

## IV. CONCLUSION

The BIA did not abuse its discretion when it denied Lin's motion to reopen. The evidence Lin submitted was insufficient to establish a material change in country conditions regarding sterilization laws or the enforcement of those laws. Lin's attempt to file a free-standing successive asylum application under 8 U.S.C. § 1158(a)(2)(D) is foreclosed by our precedent.

**PETITION DENIED.**

---

[1]Section 1158(a)(2)(D) provides an exception to the number and time limits on applying for asylum (set forth in 8 U.S.C. § 1158(a)(2)(B), (C)), for an alien who can demonstrate "the existence of changed circumstances which materially affect the applicant's eligibility for asylum . . . " 8 U.S.C. § 1158(a)(2)(D).